[PUBLISH]

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

_____

No. 15-14763

_____

D.C. Docket No. 8:13-cr-00072-SDM-MAP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MICHAEL FRANCIS DIFALCO,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

Before MARCUS and WILLIAM PRYOR, Circuit Judges, and LAWSON,[*]
District Judge.

MARCUS, Circuit Judge:

_____

[*] Honorable Roger H. Lawson, Jr., United States District Judge for the Middle District of
Georgia, sitting by designation.

Michael DiFalco appeals his 240-month sentence imposed after pleading guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine. He claims that his sentence was imposed in error because the government did not file a proper information under 21 U.S.C. § 851 to support his enhanced sentence. But DiFalco signed a plea agreement waiving his right to appeal his sentence. Because we hold that a defendant may waive § 851's requirements, and the record before us establishes that DiFalco knowingly waived his right to appeal his sentence, we dismiss his appeal. But, even if we found that the defendant had not knowingly waived his right to challenge his sentence in this Court, DiFalco has failed to meet his burden of establishing that the district court erred, plainly or otherwise, in imposing a 240-month sentence.

## I.

DiFalco was arrested and charged by a federal grand jury sitting in the Middle District of Florida for his role acting as the "source" of approximately 81 grams of methamphetamine for co-defendant Cheyenne Bryant who, in turn, sold the drugs on two occasions to a confidential informant working with federal law enforcement agents. DiFalco initially pled not guilty to a two-count indictment charging both him and Bryant. Bryant subsequently pled guilty to the charges leveled against her for conspiracy to distribute and possess with intent to distribute

50 grams or more of a substance containing a detectable amount of methamphetamine, and possession with intent to distribute and distribution of 50 grams or more of a substance containing a detectable amount of methamphetamine. The government then filed a two-count superseding indictment charging DiFalco with: (1) conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A)(viii), 851, and 18 U.S.C. § 2; and (2) possession with intent to distribute and distribution of 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 851, and 18 U.S.C. § 2.

Shortly after the superseding indictment was returned, DiFalco and the government began negotiating a possible plea agreement. As court filings from both sides indicated, DiFalco faced the possibility of a mandatory life sentence based on his multiple prior state-court drug convictions. On June 17, 2013, the Assistant United States Attorney responsible for prosecuting DiFalco informed the district court that he had received approval from his supervisor to enter into a plea agreement whereby the government would file only one 21 U.S.C. § 851 enhancement against the defendant, thereby reducing his potential sentence exposure from a mandatory term of life in prison to a mandatory minimum of 20 years of incarceration.

3

Three days later, DiFalco signed a plea agreement with the United States. Pursuant to the terms of the deal, DiFalco agreed to plead guilty to Count 1 of the superseding indictment, and the government agreed to dismiss Count 2 and refrain from charging DiFalco with any other federal crimes known to the government and related to the conduct giving rise to the agreement. The agreement also provided that, by entering a plea of guilty, DiFalco admitted to the charge alleged in Count 1 and that he had "previously [been] convicted of a felony drug offense." The agreement also accurately noted that, by pleading guilty, DiFalco would be punished "by a mandatory minimum term of 20 years and a maximum term of life imprisonment, a term of supervised release of at least 10 years, a fine of up to $20,000,000, and a special assessment of $100, said special assessment to be due on the date of sentencing."

Notably, the plea agreement also included an appeal waiver that read this way:

> The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment

4

to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

DiFalco initialed each page of the agreement and signed the final page. DiFalco acknowledged in the agreement that he was pleading guilty freely and voluntarily.

On June 27, 2013, before the defendant entered a plea of guilty, the government filed an "Information and Notice of Prior Conviction" pursuant to 21 U.S.C. §§ 851 and 841(b)(1) notifying DiFalco that he was subject to an enhanced mandatory minimum sentence based on a prior felony drug conviction. Specifically, the information said that "[o]n or about July 19, 2007, the defendant was convicted of sale and possession with the intent to sell Amphetamine and Marijuana, in and for the Tenth Circuit Court of Bartow County, Florida, Case Number 2000CF8119[.]" The details set forth in the information, however, do not precisely align with the conviction contained in DiFalco's record as set forth in his Presentence Investigation Report ("PSI"). Rather, DiFalco had a prior conviction entered on July 19, 2002 for trafficking in amphetamine, manufacture of cannabis, possession of MDMA (ecstasy), possession of Alprazolam, use or possession of drug paraphernalia, and driving with a suspended license in the Circuit Court in Polk County, Florida under case number 00-CF-8119. The PSI noted that DiFalco was also charged with possession of cannabis with intent to sell in that case, but

5

that no action was taken on that charge. DiFalco's record, as set forth in the PSI in paragraphs 45 and 46, also reveals two other sets of convictions on July 19, 2002: one for operating a chop shop and grand theft of a motor vehicle under case number 01-CF-676; and another for possession of methamphetamine, possession of cannabis, and use or possession of drug paraphernalia under case number 01-CF-677. DiFalco also had been convicted of another series of drug and vehicle related crimes on October 11, 2010, including possession of methamphetamine with intent to sell or deliver; possession of cannabis with intent to sell; possession of Oxycodone; possession of drug paraphernalia; actual or constructive possession of a structure used for trafficking, sale, or manufacture of a controlled substance; possession of a firearm or ammunition by a convicted felon; possession or sale of a vehicle with an altered vehicle identification number; and possession of a vessel with an altered hull identification number. The PSI did not indicate that DiFalco had any convictions for any crimes in 2007. The final page of the § 851 information included a certification that the assistant United States attorney had "electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the counsel of record."

Later that day, DiFalco appeared at a change-of-plea hearing before a magistrate judge to enter a plea of guilty to the federal drug conspiracy count. The

6

magistrate judge first ascertained that DiFalco was not under the influence of any type of drug or alcoholic beverage. The magistrate judge then explained the terms of the plea agreement to DiFalco in order to ensure that he understood the terms of the agreement. Among other things, the magistrate judge explained that the plea agreement provided that DiFalco would plead guilty to the first count of the indictment, that the government would dismiss the remaining counts against him, that the government would recommend he receive a sentence within the Guidelines range, that the government would recommend a downward adjustment in that range based on his acceptance of responsibility, that DiFalco agreed to cooperate fully with the government in its investigation and prosecution of others, and that DiFalco would forfeit any and all assets subject to forfeiture as a consequence of his illegal activity.

The magistrate judge also reviewed with DiFalco the penalties he would face upon pleading guilty to the conspiracy charge. Thus, he explicitly told DiFalco that he faced a minimum mandatory penalty of 20 years in prison and up to a maximum sentence of life imprisonment, a term of supervised release of at least 10 years, a fine of up to $20 million, and a special assessment in the amount of $100. The magistrate judge explained to DiFalco that the government had filed a notice of information and so DiFalco potentially faced an enhanced prison term because

of one of his prior drug convictions. DiFalco said that he understood these penalties.

The magistrate judge also explained the appeals waiver found in the plea agreement, telling DiFalco what the waiver meant and what exceptions applied. Specifically, the defendant was told that although he would ordinarily have the right to appeal his sentence to the Eleventh Circuit Court of Appeals, he was waiving his right to do so unless his sentence exceeded the applicable Guideline range, his sentence exceeded the statutory maximum penalty, or the sentence violated the Eighth Amendment prohibition against cruel and unusual punishment. Once again, DiFalco said that he understood.

The judge then explained the many trial rights that DiFalco would surrender by entering a plea of guilty. Among them were included the right to a jury trial at which the government would have to prove its case beyond a reasonable doubt, the right to be represented by counsel, the right to cross-examine witnesses against him, the right to testify or not testify as he wished, and the right to invoke subpoena power to compel witnesses to testify on his behalf. DiFalco said that he understood this too. Finally, after the magistrate judge explained the elements of the charge -- including that DiFalco had conspired to distribute and possess with intent to distribute 50 or more grams of methamphetamine and that he had a prior conviction for a felony drug offense subjecting him to a minimum mandatory

8

enhancement -- DiFalco pled guilty. DiFalco's counsel said that he was satisfied his client was pleading guilty knowingly and voluntarily and with a full understanding of the consequences. Finding that the plea had been entered both knowingly and voluntarily, the magistrate judge recommended that it be accepted by the district court. The district court did so on July 15, 2013.

The district court conducted a sentencing hearing on September 16, 2013. It overruled DiFalco's objections that some of his prior convictions that the PSI treated as separate offenses ought to be classified as one offense for purposes of calculating DiFalco's criminal history category. The district court calculated that DiFalco had an offense level of 34 and a criminal history category of VI, yielding a Guidelines range of 262 to 327 months. DiFalco's attorney argued that the district court should enter a downward variance based on DiFalco's abused childhood and the fact that he had turned to drugs as a coping mechanism for dealing with a series of serious injuries. Twice during the course of his argument, the defendant's counsel acknowledged that DiFalco faced a mandatory minimum term of 20 years' imprisonment. Indeed, DiFalco himself also noted that fact during his own remarks to the court, saying, "My crime carries ten years, but my past of being a drug addict doubles it to 20." The defendant also acknowledged having seen the PSI and discussing it with counsel.

9

The district court did vary downward from the guidelines range, sentencing DiFalco to the mandatory minimum of 240 months' imprisonment followed by 10 years of supervised release. The district court waived imposition of a fine, but levied a special assessment of $100. Notably, defense counsel offered no objection to the sentence or the manner of its announcement when asked by the district court at the conclusion of the proceeding.

No appeal was filed within the time period permitted under Fed. R. App. P. 4(b)(1). But, in 2014, the district court granted DiFalco's 28 U.S.C. § 2255 application claiming that he had received ineffective assistance of counsel because his lawyer failed to file a notice of appeal despite having been directed to do so. The district court vacated the judgment so that the sentence could be re-imposed, thereby allowing DiFalco to file a timely notice of appeal to this Court. On October 23, 2015, the district court re-imposed the same sentence on DiFalco.

This timely appeal followed.

## II.

DiFalco argues broadly that the government has failed to comply with § 851(a)(1)'s notice requirements, rendering his enhanced sentence invalid. He asks this Court not to "vacate his entire guilty plea or plea agreement, but only his agreement to an enhanced minimum penalty." Moreover, DiFalco says that the district court failed to ensure during the plea colloquy that he understood he was

10

pleading to an enhanced minimum sentence; and that it also erred by failing to comply with § 851(b)'s requirement that he be given the opportunity to affirm or deny the particular prior conviction that was used to enhance his sentence.

## A.

DiFalco pled guilty to conspiring to distribute and possess with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), 846, and 851. Section 841 makes it a crime "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Where the controlled substance involves 50 grams or more of methamphetamine -- as was the case here -- the defendant faces a prison sentence ranging from a mandatory minimum of 10 years to a maximum of life, followed by a five-year term of supervised release. 21 U.S.C. § 841(b)(1)(A)(viii). If, however, the defendant had previously been convicted of a felony drug offense, the mandatory minimum term of imprisonment rises to 20 years, followed by a 10-year term of supervised release. Id. The maximum term of imprisonment remains life. Id. Section 846 makes it a crime to attempt or conspire to commit any of the crimes defined in that subchapter of the United States Code. 21 U.S.C. § 846.

Although § 841 provides for enhanced sentences for defendants previously convicted of felony drug offenses, these enhancements are not automatic. Rather,

11

the government is required by the terms of § 851 first to file an information providing notice of the previous conviction supporting the enhanced sentence. Thus, § 851 provides:

> No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon.

21 U.S.C. § 851(a)(1). This notice allows the defendant to contest the accuracy of the government's pleading as well as affording the defendant "ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." United States v. Ramirez, 501 F.3d 1237, 1239 (11th Cir. 2007) (quoting United States v. Williams, 59 F.3d 1180, 1185 (11th Cir. 1995)); accord United States v. Duffy, 179 F.3d 1304, 1305 (11th Cir. 1999). These procedural safeguards are mandatory and must be followed in all cases before a defendant's sentence may be enhanced under § 841. Carachuri-Rosendo v. Holder, 560 U.S. 563, 569 & n.6 (2010); United States v. Thompson, 473 F.3d 1137, 1144 (11th Cir. 2006).

The statute also provides that after the § 851 information has been filed, the district court shall inquire of the defendant whether he affirms or denies the conviction alleged in the information and "inform him that any challenge to a prior

12

conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). A defendant who challenges the convictions alleged in the information must file a written response to the information, at which point the district court shall hold a hearing. 21 U.S.C. § 851(c)(1). But "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e).

## B.

Before we turn to the merits of DiFalco's § 851 claims, we are obliged first to address the government's argument that DiFalco waived his right to appeal this issue in his plea agreement. If that waiver applies, DiFalco would be barred from raising his claim and we would be required to dismiss his appeal. United States v. Johnson, 541 F.3d 1064, 1069 (11th Cir. 2008); United States v. Howle, 166 F.3d 1166, 1168 (11th Cir. 1999).

"We review the validity of a sentence appeal waiver de novo." Johnson, 541 F.3d at 1066; United States v. Bushert, 997 F.2d 1343, 1352 (11th Cir. 1993). In order to be valid, the appeal waiver must be made knowingly and voluntarily. Bushert, 997 F.2d at 1350. To enforce an appeal waiver, the government must establish either that "(1) the district court specifically questioned the defendant

concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." Id. at 1351; accord Johnson, 541 F.3d at 1066. Significantly, a waiver of appellate rights applies not only to frivolous claims, but also to difficult and debatable legal issues. Johnson, 541 F.3d at 1068; United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005); Howle, 166 F.3d at 1169. Indeed, it even "includes a waiver of the right to appeal blatant error." Howle, 166 F.3d at 1169; accord Johnson, 541 F.3d at 1068; Grinard-Henry, 399 F.3d at 1296. Thus, even issues that are vigorously disputed at sentencing are not exempted from an otherwise valid and applicable appeal waiver. United States v. Bascomb, 451 F.3d 1292, 1296 (11th Cir. 2006); United States v. Buchanan, 131 F.3d 1005, 1007, 1009 (11th Cir. 1997).

That said, the parties may not waive a jurisdictional defect. McCoy v. United States, 266 F.3d 1245, 1249 (11th Cir. 2001). Because the federal courts are courts of limited jurisdiction, deriving their power from Article III of the Constitution and from the legislative acts of Congress, the parties cannot confer upon the courts a jurisdictional foundation that they otherwise lack. Harris v. United States, 149 F.3d 1304, 1308 (11th Cir. 1998). Thus, a party's waiver or procedural default would be insufficient to confer subject-matter jurisdiction. McCoy, 266 F.3d at 1249; Harris, 149 F.3d at 1308. A judgment tainted by a

14

jurisdictional defect -- even one that has been waived -- must be reversed. McCoy, 266 F.3d at 1249.

### 1.

The first question before us, then, boils down to whether § 851 is in fact a jurisdictional requirement. This Court and its predecessor Court, the former Fifth Circuit Court of Appeals, have repeatedly held that it is. Thus, for example, in Harris v. United States, we relied on this Court's repeated and binding precedent in concluding that a district court lacked jurisdiction to impose an enhanced § 851 sentence absent the government filing an information in accordance with the requirements of the statute. 149 F.3d at 1306-07 (citing United States v. Olson, 716 F.2d 850, 853 (11th Cir. 1983); United States v. Cevallos, 538 F.2d 1122, 1125 n.4 (5th Cir. 1976); United States v. Noland, 495 F.2d 529, 533 (5th Cir. 1974)). These precedents led us to conclude that "even where a defendant receives actual notice that the government intends to rely on a previous conviction to enhance his sentence, the district court lacks jurisdiction to impose an enhanced sentence until the government files an information as required under § 851." Id. at 1307. We held, therefore, that a § 2255 applicant was not required to show cause or prejudice to obviate a procedural default by failing to object to the § 851 information at trial because a jurisdictional defect could not be procedurally defaulted or waived. Id. at 1308-09; see also United States v. Jackson, 544 F.3d

15

1176, 1184-85 (11th Cir. 2008); Ramirez, 501 F.3d at 1239-40; Thompson, 473 F.3d at 1144. We have since cast doubt on whether Harris's jurisdictional holding remains good law in light of subsequent Supreme Court rulings. United States v. Ladson, 643 F.3d 1335, 1343 n.11 (11th Cir. 2011) (citing Eberhart v. United States, 546 U.S. 12, 16 (2005); Kontrick v. Ryan, 540 U.S. 443, 455 (2004)).

We are required to adhere to our past decisions. United States v. Archer, 531 F.3d 1347, 1352 (11th Cir. 2008); United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc). But the rule is not without exception. Thus, we are not bound by the decisions of our prior panels where those decisions have been overruled or undermined to the point of abrogation by the Supreme Court or by this Court sitting en banc. United States v. Whatley, 719 F.3d 1206, 1216 (11th Cir. 2013); Archer, 531 F.3d at 1352; Chambers v. Thompson, 150 F.3d 1324, 1326 (11th Cir. 1998). The exception applies only where the intervening decisions "actually abrogate or directly conflict with, as opposed to merely weaken, the holding of the prior panel." United States v. Kaley, 579 F.3d 1246, 1255 (11th Cir. 2009).

We hold today that our decisions that § 851 imposes a jurisdictional limit on a district court's authority have been undermined to the point of abrogation by subsequent decisions of the Supreme Court. First, in Kontrick v. Ryan, 540 U.S. 443 (2004), the Supreme Court considered Federal Rule of Bankruptcy Procedure

16

4004's strict time limits on when a creditor may file an objection to a debtor's discharge from bankruptcy. In that case, a creditor filed an untimely objection to a debtor's discharge, but the debtor did not argue the untimeliness of the objection until after the bankruptcy court had decided the issue on the merits. Id. at 446. If the rule's requirements were jurisdictional, the debtor's delay in challenging the objection would not matter because a jurisdictional defect may be raised at any time in a civil action. Id. at 455. The Court concluded that, although the time limit prescribed by the rule could not be altered by the parties' application, it was nonetheless not a jurisdictional requirement because it did not "delineate what cases bankruptcy courts are competent to adjudicate." Id. at 454. Indeed, the bankruptcy courts' jurisdiction over objections to discharge had been statutorily granted by Congress in 28 U.S.C. § 157. Id. at 453. Most significantly for our purposes, the Supreme Court instructed us that jurisdictional rules are reserved "only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority." Id. at 455. Thus, because Rule 4004 did not define the class of cases or persons subject to the bankruptcy courts' adjudicatory authority, it served as a claim-processing rule rather than a jurisdictionally imposed requirement. Id. The significance of this distinction was that, unlike a jurisdictional rule, a claim-processing rule can be forfeited by a party. Id. at 456. Because Rule 4004 did not

17

fall within the Supreme Court's newly clarified conception of jurisdictional provisions, the debtor was not permitted to invoke it after he had litigated and lost the case on the merits, as he would have been permitted to do had the rule been jurisdictional. Id. at 460. The Supreme Court noted that its use of the term "jurisdictional" in the past had been "less than meticulous," but indicated a firm commitment to clarifying its use in the future. Id. at 454.

The Supreme Court was given an opportunity to do so again the following year when it decided Eberhart v. United States, 546 U.S. 12 (2005). There, the Court had to determine whether a defendant's failure to comply with Fed. R. Crim. P. 33(b)(2)'s rigid seven-day deadline for moving for a new trial could be raised by the government after the district court had ruled on the merits of the motion.[1] Id. at 13. Applying the same rationale it had used in Kontrick, the Supreme Court highlighted the "critical difference between a rule governing subject-matter jurisdiction and an inflexible claim-processing rule." Id. (quoting Kontrick, 540 U.S. at 456). It reiterated that the label "jurisdictional" should be reserved only for those issues that delineated a court's adjudicatory authority. Id. at 16. Because Rule 33 did not speak to the district court's authority over the subject-matter of the case, nor did it limit the power of the district court to adjudicate the case, it was not a jurisdictional rule immune to forfeiture. Id. at 16, 19. This was so, even though

---

[1] The deadline has since been extended to 14 days. Fed. R. Crim. P. 33(b)(2).

18

Rule 33's timeliness requirement remained both unmistakable and mandatory. Id. at 16-17. Thus, the Court held that Rule 33 is a claim-processing rule that, although mandatory, could be forfeited when, as in that case, it had not been timely raised. Id. at 19.

This more-focused conception of jurisdiction was anticipated by our Court in its en banc decision in United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001) (en banc), abrogated on other grounds by United States v. Duncan, 400 F.3d 1297, 1308 (11th Cir. 2005). In Sanchez, we rejected the defendants' claims that an Apprendi error is structural or jurisdictional in the course of concluding that harmless error review applies. Id. at 1272-75. We wrote that "[a] jurisdictional defect occurs only where a federal court lacks power to adjudicate at all." Id. at 1273 (emphasis added). Significantly, this is wholly consonant with the Supreme Court's admonition in Kontrick that the label "jurisdictional" should be reserved only for those prescriptions delineating the court's adjudicatory authority over classes of cases and persons. See Kontrick, 540 U.S. at 455. It should not be applied to prescriptions (or proscriptions) limiting a court's actions in a case in which the court's underlying authority to decide the matter is unquestioned.

Most recently, in Santiago-Lugo v. Warden, 785 F.3d 467, 471 (11th Cir. 2015), we determined that the Supreme Court had abrogated our prior case law holding that a habeas petitioner's failure to exhaust all available administrative

19

remedies created a jurisdictional defect. We noted that the "term 'jurisdiction' has become 'a word of many, too many, meanings,' " id. at 472 (quoting Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 90 (1998)), and does not apply to "claim-processing rules" that "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times," id. (quoting Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 435 (2011)). In short, we said, "where Congress does not say there is a jurisdictional bar, there is none." Id. at 473 (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 161-62 (2010)).

It is clear that the Supreme Court's holdings in Kontrick and Eberhart and their rationale have undermined to the point of abrogation our prior holdings that the requirements found in § 851 are jurisdictional in nature. There is no way to reconcile our holding in Harris and the other decisions we have cited with the understanding of what makes a statute "jurisdictional" announced by the Supreme Court. For starters, it is clear that § 851's notice requirement does not affect the district court's subject-matter jurisdiction over cases involving offenses against the laws of the United States. To the contrary, that authority is plainly vested in the district courts by Congress. Thus, in 18 U.S.C. § 3231 Congress legislated: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

20

Moreover, this jurisdictional grant necessarily includes the requirement to sentence pursuant to the penalties as codified by Congress. Any deficiency found in a § 851 notice cannot and does not mean that the district court lacks the power to adjudicate the case at all. Cf. Sanchez, 269 F.3d at 1273. Rather, § 851 provides a procedural step that may be required before a statutorily enhanced sentence may be imposed. The failure to abide by that mandated procedural step does not mean that the court is left without the power to act at all -- it simply means that the court may be erroneously exercising its power if it wrongly applies a § 851 enhancement. The erroneous exercise of a § 851 enhancement is plainly subject to correction on review by the appellate courts without resorting to the obviously erroneous suggestion that the district court lacked all authority to decide the criminal case or to impose a sentence in the first instance. The essential point is that a court's jurisdiction, or power to adjudicate a case, derives from the court's statutory or constitutional authority. Section 851 is essentially a claim-processing rule that has no impact on the district court's subject-matter jurisdiction.

That § 851 is denuded of any jurisdictional component is evidenced by the fact that the district court had the lawful power to accept DiFalco's plea and impose a sentence upon him. And, indeed, it had the statutory authority to impose the very same 240-month sentence even without the filing of any § 851

21

information.   The enhancements made possible by § 851 only limited the district court's ability to impose a sentence <u>lower</u> than the one it imposed on DiFalco.

In holding that our prior opinions on this point have been undermined to the point of abrogation, we join at least one of our sister circuits in concluding that the Supreme Court rulings require that we disregard previous decisions declaring the requirements found in § 851 to be jurisdictional.  See <u>United States v. Flowers</u>, 464 F.3d 1127, 1130 (10th Cir. 2006) ("We now expressly overrule our previous decisions that have improperly designated § 851(a)'s requirements as jurisdictional.").  In holding that § 851 is not a jurisdictional requirement, we join the unanimous opinion of nine other circuit courts of appeals to have ruled on the subject, both before and after the Supreme Court's recent explication of the difference between a jurisdictional requirement and a claim-processing rule.  See <u>United States v. Pritchett</u>, 496 F.3d 537, 546 (6th Cir. 2007) ("This Circuit now joins the majority of its sister circuits in holding that the section 851(a) requirements are not jurisdictional."); <u>United States v. Beasley</u>, 495 F.3d 142, 146 (4th Cir. 2007) ("We conclude that 21 U.S.C. § 851 is not jurisdictional and therefore is subject to the usual rules of procedural default."); <u>Flowers</u>, 464 F.3d at 1129 ("Section 851(a) and its requirements fall neatly within the category of a claim-processing rule."); <u>Sapia v. United States</u>, 433 F.3d 212, 217 (2d Cir. 2005) ("We thus hold that the fulfillment of § 851(a)(1) is not 'jurisdictional.' "); <u>United</u>

22

States v. Ceballos, 302 F.3d 679, 692 (7th Cir. 2002) ("In sum, today we hold that § 851(a)'s procedural requirements are not jurisdictional, and our prior cases holding otherwise are expressly overruled on that issue."); United States v. Dodson, 288 F.3d 153, 160 & n.9 (5th Cir. 2002) ("Considering the right protected by § 851, we see no reason why the rights afforded under that statute may not be waived."); United States v. Mooring, 287 F.3d 725, 727 (8th Cir. 2002) ("Having considered the case law on each side, we conclude the prosecution's noncompliance with § 851(a)(1) does not affect the court's jurisdiction."); Prou v. United States, 199 F.3d 37, 46 (1st Cir. 1999) ("Accordingly, we hold that noncompliance with the procedural regime established by section 851(a)(1) deprives the sentencing court of authority to impose an enhanced sentence -- no more and no less."); United States v. Vanness, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996) (" 'Jurisdiction' is a word of many, too many, meanings. We prefer to put the matter in different terms. A prosecutor's compliance with § 851(a)(1) is simply a necessary condition to a judge's imposing an enhanced sentence on the basis of a defendant's prior convictions."); but see United States v. Severino, 316 F.3d 939, 953 n.4 (9th Cir. 2003) (declining to consider whether § 851's requirements were jurisdictional because, in either event, reversal was required).

Lest there be any confusion, our holding today that § 851 is not a jurisdictional provision does not in any way affect our holdings that § 851 imposes

23

mandatory requirements on the government before a court may enhance a sentence under § 841. See Ladson, 643 F.3d at 1343-44 ("Today, we hold that the statutory language of § 851(a)(1) requires the Government to strictly comply with the service requirement before trial."); Thompson, 473 F.3d at 1144 ("The requirements of § 851 are not precatory; they must be followed in order for the § 841 enhancements to be applied.").

**2.**

Having concluded that § 851's requirements are not jurisdictional -- and, thus, subject to waiver -- we turn to whether DiFalco did knowingly and voluntarily waive his right to challenge the § 851 notice when he signed the plea agreement. Upon a fair review of this record, we are satisfied that DiFalco knowingly and voluntarily waived his right to appeal his sentence. Thus, we dismiss his appeal. There is no dispute -- and it is abundantly clear in the record -- that the magistrate judge specifically engaged in an extensive colloquy with DiFalco about the nature and function of the sentence appeal waiver found in his plea agreement during the Rule 11 colloquy. The magistrate judge explained that DiFalco would ordinarily have the right to appeal his sentence, but that if he entered a plea of guilty he would be waiving his right to appeal unless one of the three exceptions outlined in the agreement had been met. DiFalco said he understood that he was giving up his right to appeal his sentence unless one of

those exceptions was met.  None of those exceptions are applicable here and we have little difficulty concluding that DiFalco entered into this appeal waiver knowingly and voluntarily.  See Bushert, 997 F.2d at 1351; Johnson, 541 F.3d at 1066.

To the extent that DiFalco claims that his plea was not entered knowingly and voluntarily because the magistrate judge never clarified that his prior felony drug conviction qualified him for an enhanced minimum sentence, we remain unpersuaded.  This argument is unsupported by the record.  In the course of explaining the elements of the crime that the government would have to prove should DiFalco wish to exercise his right to go to trial, the magistrate judge explained "out of an abundance of caution" that "the government would be required to prove that you have a prior conviction for a felony drug offense subjecting you to the minimum mandatory enhancement."  DiFalco said that he understood this.

The long and short of it is, the § 851 errors that DiFalco highlights were properly waivable and were knowingly and voluntarily waived by him.

### III.

Moreover, and as an independent basis for our ruling, we hold that even if the defendant did not knowingly waive his right to challenge his enhanced sentence, his claim fails on the merits.  DiFalco cites to four errors in the § 851

25

proceeding: (1) the inaccuracies in the government's § 851 notice rendered it insufficient; (2) the government did not timely file the notice; (3) the magistrate judge failed to conduct an appropriate Rule 11 colloquy; and (4) the district court erred by not making a § 851(b) inquiry. None of these claims were raised in the district court. Therefore, we may review them only for plain error.[2] United States v. Williams, 469 F.3d 963, 965 (11th Cir. 2006).

We may correct a plain error only when (1) an error has occurred, (2) the error was plain, and (3) the error affected substantial rights. See United States v. Williams, 527 F.3d 1235, 1240 (11th Cir. 2008). An error is plain where it is "clear" or "obvious." United States v. Olano, 507 U.S. 725, 734 (1993). "Under plain-error review, the silent defendant has the burden 'to show the error plain, prejudicial, and disreputable to the judicial system.' " United States v. Monroe, 353 F.3d 1346, 1349-50 (11th Cir. 2003) (quoting United States v. Vonn, 535 U.S. 55, 65 (2002)); United States v. Rodriguez, 398 F.3d 1291, 1299 (11th Cir. 2005).

---

[2] DiFalco argues that plain error review does not apply to a challenge to the sufficiency of § 851 notice and that de novo review applies to such a challenge. But the cases DiFalco cites in support of the application of de novo review are cases in which the issue had been contemporaneously raised before the trial court. See Ladson, 643 F.3d at 1340 ("Ladson's sentencing counsel objected to the sentence enhancement, arguing that the second information was not properly filed and served in accordance with § 851(a)(1)."); Jackson, 544 F.3d at 1180 ("In his objections to the PSI, Jackson argued, inter alia, the four prior convictions listed in the § 851 notice were invalid and moved to dismiss the § 851 notice."); Ramirez, 501 F.3d at 1238-39 (applying de novo review on the government's appeal of the district court's decision that § 851 notice had not been timely filed under the appropriate case number). The purpose behind imposing the requirements of plain error review is to enforce the requirement that these kinds of objections should first be made in district court so that the trial court may address and resolve them contemporaneously.

"If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." United States v. Cotton, 535 U.S. 625, 631-32 (2002) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). The plain error test is "difficult to meet" and places "a daunting obstacle before the appellant." Rodriguez, 398 F.3d at 1298 (alteration adopted) (quoting United States v. King, 73 F.3d 1564, 1572 (11th Cir. 1996)); United States v. Pielago, 135 F.3d 703, 708 (11th Cir. 1998)). Thus, "[t]he Supreme Court has instructed us that plain error review should be exercised 'sparingly,' and only 'in those circumstances in which a miscarriage of justice would otherwise result.'" Id. (citation omitted) (quoting Jones v. United States, 527 U.S. 373, 389 (1999); Olano, 507 U.S. at 736). DiFalco has failed to meet his burden to establish error, let alone error that was plain or obvious, that affected his substantial rights, or the fairness and integrity of the judicial proceedings.

## A.

First, DiFalco objects to the sufficiency of the § 851 information, arguing that it was rife with inaccuracies. While the § 851 notice was hardly a model to be emulated by prosecutors in future cases, the notice was sufficient to satisfy the mandatory requirements of the statute. See Ladson, 643 F.3d at 1343-44; United States v. Rutherford, 175 F.3d 899, 904 (11th Cir. 1999). Notice under § 851 is

required even where "the defendant is not surprised by the enhanced sentence, was aware from the outset that his previous conviction could lead to an enhanced sentence, never challenged the validity of the prior conviction, and admitted it at the sentencing hearing." United States v. Weaver, 905 F.2d 1466, 1481 (11th Cir. 1990). Indeed, we have written that "[s]trict compliance would seem to be an easy thing for the government to do." Rutherford, 175 F.3d at 904. That said, strict compliance does not require perfection in the notice. Perez v. United States, 249 F.3d 1261, 1267 (11th Cir. 2001). Thus, in Perez, we found that sufficient § 851 notice had been provided even though the information timely filed by the government listed the incorrect year of the defendant's prior conviction. Id. at 1263, 1267. We adopted the reasoning from our sister circuits that "an information complies with the requirements of § 851(a)(1) even if it contains an error in its contents, provided that the information serves to signal unambiguously the government's intent to seek an enhancement based on a particular prior conviction." Id. at 1265.

Here, the § 851 information provided sufficient notice of the government's intent to seek an enhancement based on a particular and defined prior felony drug conviction. The notice stated that on or about July 19, 2007, the defendant was convicted of sale and possession with the intent to sell amphetamine and marijuana, in and for the Tenth Circuit Court of Bartow County, Florida, under

28

case number 2000CF8119.  In fact, DiFalco was convicted on July 19, 2002 for trafficking in amphetamine under case number 00-CF-8119, in the Circuit Court of Polk County, Florida.  It is not at all clear that the district court's acceptance of the notice was error at all, let alone one that was plain or obvious.

First, significantly, the information correctly listed the underlying case number.  That the case number in the information listed the full year of the arrest (2000) instead of simply the last two digits of the year (00) did not make the listing incorrect, let alone did it introduce any ambiguity as to which conviction the government was relying upon.  In the second place, we are hard pressed to see how listing the court of conviction as the "Tenth Circuit Court of Bartow County, Florida" would confuse DiFalco about the venue of his conviction which was in Florida's Tenth Judicial Circuit, the circuit that encompasses Polk County and the city of Bartow.  Moreover, as we held in Perez, an incorrect last digit in the year of the prior conviction is not enough to make the § 851 notice insufficient.  See id. at 1263.  A scrivener's error does not warrant the vacatur of a sentence where the evidence overwhelming establishes that the defendant plainly knew what prior crime formed the foundation of the § 851 notice.  This is particularly so where DiFalco had no convictions in 2007 for any crime that might have led him astray.

Finally, the difference between DiFalco's listed conviction for sale and possession with the intent to sell amphetamine and marijuana and his actual

29

conviction for trafficking in amphetamine is minimal. This is particularly so where Florida's trafficking in amphetamine statute at the time of DiFalco's conviction read this way:

> Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of, 14 grams or more of amphetamine . . . commits a felony of the first degree, which felony shall be known as "trafficking in amphetamine" . . . .

Fla. Stat. Ann. § 893.135(1)(f)(1) (2002). That the information listed the conviction's elements rather than formal title of trafficking appears to us to be exceedingly unlikely to have caused DiFalco any confusion. This is especially true where DiFalco's criminal record reveals only one conviction regarding amphetamines (as opposed to methamphetamines). The erroneous listing of a marijuana conviction in the information (when, in fact, no action was taken on that charge) is of no moment because, in any event, DiFalco had plainly and undeniably been put on notice that the government was relying on his amphetamine conviction. Any marginal puzzlement DiFalco may have experienced would have been more than overcome by the bulk of the information accurately describing his conviction.

As we see it, DiFalco had enough accurate information to enable him easily to research, identify, and potentially contest the accuracy of the notice and information. Had he been confused as to which conviction the government relied

30

upon in seeking an enhanced sentence, he had many opportunities to make that confusion known both at his change of plea hearing and at his sentencing. But he failed to contest the information in any way until this appeal. Thus, while the information was sloppily prepared by the government in this case, we do not believe that DiFalco has met his burden of showing an error, let alone an error that was plain or obvious.

But even if the error in the notice was plain or obvious, DiFalco has not carried his burden of showing that the error affected his substantial rights. At the outset, we note that DiFalco's Guidelines range, independent of any § 851 enhancement, was 262 to 327 months' imprisonment based on his offense and criminal history, none of which had been challenged by the defendant. Thus, even without considering the enhancement, DiFalco faced a recommended prison sentence longer than the one he actually received. To be sure, the district court varied downward when it sentenced DiFalco to the mandatory 20 year minimum term. But this does not require that we conclude that DiFalco has carried his burden of showing that the district court likely would have departed downward still further but for the application of the enhanced mandatory minimum. This is particularly so where DiFalco can point to nothing in the record where the district court lamented his inability to impose a lower sentence. To the contrary, the district court noted that there were "a lot of reasons" that DiFalco should be

.

31

sentenced in the middle or even at the high end of the Guidelines range before concluding that he was "confident that the sentence is sufficient, but not greater than necessary to comply with the statutory purposes of sentencing." In fact, the district court went out of its way to make sure DiFalco understood how close he had come to serving a life sentence.

Finally, DiFalco has fallen far short of establishing that any alleged error seriously affected the fairness, integrity, or public reputation of the judicial proceedings in his case. He simply cannot meet his burden when he received exactly the benefit his attorney had spent months negotiating on his behalf. Indeed, at sentencing, DiFalco's attorney actually thanked the government for agreeing to the plea agreement with DiFalco rather than seeking the mandatory life sentence DiFalco's lengthy criminal record entitled it to seek. Nor is there any dispute that DiFalco actually had multiple drug convictions that would expose him to an enhanced sentence. Even though the § 851 information in this case may have left something to be desired, the fairness, integrity, or public reputation of the judicial proceedings were in no way affected by holding DiFalco to the plea agreement he knowingly and voluntarily entered into.

## B.

Next, DiFalco says that the information was neither filed timely nor served upon him because it was filed electronically on the district court's docket on the

same day as his plea hearing, but, notably, before he entered his plea.

Section 851(a)(1) requires that the information be filed before trial or before the

entry of a guilty plea. 21 U.S.C. § 851(a)(1). We have held that § 851 requires the

information be filed and served before entry of the defendant's guilty plea. United

States v. Duffy, 179 F.3d 1304, 1305 (11th Cir. 1999). Thus, even notice filed and

served during the course of the plea hearing itself is timely provided it occurs

before the district court accepts the defendant's guilty plea. Id. Here, the record is

clear that the notice was sent hours before the plea hearing and that notice had been

sent to defense counsel electronically. Moreover, at the plea colloquy, the

magistrate judge reminded everyone that the government had filed the § 851

information without provoking any objection from DiFalco or his attorney. To the

extent DiFalco argues that service was insufficient because it was not delivered by

hand, we know of no requirement that a § 851 notice be delivered by hand as

opposed to being delivered electronically. And, in any event, even if some error

lurked in the process of filing or delivering the notice, the error could not have

been plain or obvious in the absence of any law requiring that method of

communication. See United States v. Schultz, 565 F.3d 1353, 1357 (11th Cir.

2009) ("An error is not plain unless it is contrary to explicit statutory provisions or

to on-point precedent in this Court of the Supreme Court."). Nor, finally, has

DiFalco established his burden under plain error review of showing how his

substantial rights were affected, let alone that the fairness and integrity of the judicial proceeding had been undermined.

## C.

DiFalco also argues that the magistrate judge erred by not informing DiFalco that his prior conviction subjected him to an enhanced mandatory minimum sentence. Under Fed. R. Crim P. 11, a judge accepting a guilty plea from a defendant is required to inform the defendant of, and determine that the defendant understands, the rights he is surrendering and the consequences of his plea as well as determining that the plea is voluntary. Fed. R. Crim. P. 11(b). A judge is not required to recite the list in Rule 11 verbatim, so long as he covers the substance of the issues presented in the Rule. Monroe, 353 F.3d at 1351. Thus, at bottom, the judge must determine that (1) the guilty plea is free from coercion; (2) the defendant understands the nature of the charges; and (3) the defendant understands the consequences of his guilty plea. United States v. Gandy, 710 F.3d 1234, 1240 (11th Cir. 2013); Monroe, 353 F.3d at 1354. To show that the judge committed plain error under Rule 11, a defendant must show, among other things, a reasonable probability that he would not have entered the plea but for the error. Gandy, 710 F.3d at 1240.

DiFalco has not shown that the magistrate judge committed any error at all in conducting the Rule 11 colloquy, let alone plain error. First, contrary to

34

DiFalco's claim, the magistrate judge informed him that his prior drug conviction subjected him to an enhanced minimum sentence. DiFalco said that he understood when the magistrate told him that, should he go to trial, "the government would be required to prove that [he had] a prior conviction for a felony drug offense subjecting [him] to the minimum mandatory enhancement." Moreover, the plea colloquy addressed the core concerns of Rule 11. The magistrate judge reviewed the penalties DiFalco faced, noting that the government had filed a notice of information saying that DiFalco had a prior drug conviction and potentially faced an enhanced sentence of 20 years to life in prison. Neither DiFalco nor his attorney indicated any confusion regarding his prior conviction or the consequences it would carry for his sentence. DiFalco also affirmed that he had not been promised anything different from his plea agreement, that he had not been threatened into pleading guilty, and that he had decided to plead guilty only after counseling with his attorney. Moreover, DiFalco has not even suggested that he would not have pled guilty but for the claimed error in the plea colloquy. Indeed, his attorney spent months diligently negotiating the beneficial plea deal he received.

### D.

Finally, DiFalco argues that the district court erred by failing to engage in a § 851(b) inquiry. Section 851(b) directs a district court to inquire of a defendant

against whom a § 851 information has been filed whether he affirms or denies that he was previously convicted as alleged in the information. 21 U.S.C. § 851(b). But § 851(b) need not be complied with in all cases. Indeed, "[a] trial court is not required 'to adhere to the rituals of § 851(b) where a defendant, as a matter of law, is precluded [by § 851(e)] from attacking the conviction forming the basis of the enhancement information.' " Weaver, 905 F.2d at 1482 (quoting United States v. Nanez, 694 F.2d 405, 413 (5th Cir. 1982)); accord United States v. Williams, 438 F.3d 1272, 1274 (11th Cir. 2006). Section 851(e) provides that "[n]o person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging such prior conviction." 21 U.S.C. § 851(e). DiFalco's conviction occurred in 2002, more than five years before the government filed its § 851 notice. Even the incorrect conviction date cited by the government in its information was more than five years before the government filed the information. Because the conviction occurred more than five years before the date of the information alleging the prior conviction, DiFalco was barred from challenging the validity of that conviction under § 851(e). See Williams, 438 F.3d at 1274; Weaver, 905 F.2d at 1482. Thus, we can discern no error -- let alone plain error -- in the district court's failure to engage in a § 851(b) inquiry.

36

Accordingly, even if DiFalco has not waived his right to contest his sentence, the judgment of the district court must be affirmed.

**DISMISSED.**