[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-15116
Non-Argument Calendar

_____

D.C. Docket No. 4:19-cr-00069-MW-CAS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL GILBERT BROWN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(September 8, 2020)

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

Michael Gilbert Brown pleaded guilty to failing to register as a sex offender. The district court sentenced him to thirty months in prison followed by five years of supervised release. On appeal, Brown challenges the district court's decision to impose a term of imprisonment at the top end of the guideline range because the court, he claims, relied on incredible testimony and hearsay evidence. He also contends that the district court erred in imposing a five-year, instead of a three-year, term of supervised release. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 24, 2012, Brown was convicted of criminal sexual conduct with a minor in Minnesota state court and sentenced to ten years in state prison. While in prison, Brown completed his sexual offender registration paperwork. In 2017, shortly before his release, he completed an "Address Verification Form." On the form, Brown acknowledged that (1) he must register all changes of his primary address at least five days before moving, and (2) if he moved to a new jurisdiction, he must report his new address to law enforcement within twenty-four hours of entering that jurisdiction.

In November 2017, Brown was released from prison and entered a halfway house in Minnesota. He absconded, and a violation of probation warrant was issued. Two months later, he was arrested and sentenced to ninety days of incarceration for the violation. In April 2018, Brown was released and, again, entered a halfway

house in Minnesota.  Three weeks later, Brown absconded from the halfway house, and another violation of probation warrant was issued.

In July 2018, Brown was arrested in Tallahassee, Florida, and sent back to Minnesota.  His girlfriend told officers that Brown had come to Tallahassee on a Greyhound bus in May 2018—which bus records corroborated—and that Brown had told her that he was granted permission to travel by his supervisor in Minnesota.  At no time between May and July 2018 did Brown report to authorities in Minnesota or Florida that he was planning on relocating or that he, in fact, had relocated to Florida.  Nor did he advise either state that he had obtained a new primary address in Florida.  In August 2018, a Minnesota state court sentenced him to 180 days for violating probation.  He was released in January 2019.

On July 9, 2019, a federal grand jury in the Northern District of Florida indicted Brown for failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a).  Brown pleaded guilty with the benefit of a plea agreement.  The agreement stated that, in addition to a term of imprisonment and fines, Brown "face[d] a maximum term of . . . three years of supervised release."  The agreement notified Brown that "the sentence to be imposed [was] left solely to the discretion of the District Court" and "[was] limited only by the statutory maximum sentence and any mandatory minimum sentence prescribed by statute for the offense."

3

The probation office prepared a presentence investigation report, calculating Brown's advisory guideline range at twenty-four to thirty months imprisonment. The report also noted that, although the plea agreement stated that Brown was not subject to more than three years of supervised release, the applicable statutory supervised-release range for his conviction was actually five years to life under 18 U.S.C. § 3583(k) and that the guideline term of supervised release was also five years. See U.S.S.G. § 5D1.2(c). Brown did not object to the corrected supervised-release range.

At the sentencing hearing, Brown testified about his difficult upbringing and the positive steps he was taking in his life, including starting his own business. He told the district court that, between his release from custody in January 2019 and his arrest in July 2019, he stayed out of trouble and was working as a full-time employee for a landscaping company. He also presented letters from his former employers, his younger sister, and a woman who ran the halfway house that Brown stayed at after he was released from Minnesota state prison.

The government called Brown's parole agent in Minnesota, Mike Bedard, to testify about Brown's history of supervised release after his January 2019 release. Agent Bedard said that, in March 2019, Brown violated the terms of his release when he tested positive for alcohol but was allowed to remain in the community. Agent Bedard testified that he also received a phone call from a woman claiming to be

4

Brown's girlfriend about a month later.  The woman said "that [Brown] had financially defrauded her and stole from her" and "disclosed that she ha[d] minor children" with whom "Brown had contact."  As a result, Brown was arrested in April 2019 for violating the terms of his release because he was not allowed to have contact with minors and did not keep his agent informed of his residence.

The government showed Agent Bedard the transcript of the Minnesota state court hearing Brown had attached to his sentencing memorandum and asked Agent Bedard if he could identify any discrepancies.  First, Agent Bedard disagreed with Brown's testimony in the transcript that "everybody knew where [Brown] was" in the months between absconding from the halfway house and being arrested in Tallahassee.  Agent Bedard testified that he did not know where Brown was during that time and that Brown had absconded the day before an upcoming court date. Agent Bedard then read a letter he received from the halfway house stating that Brown "did not follow through" with attending court, "manipulated staff into allowing him to leave early for work[,] and went on the run."  Second, Agent Bedard disagreed with Brown's testimony that he was on supervised release when he fled to Tallahassee because time spent on the run does not count towards his supervised release.

Lastly, the government presented the Greyhound bus records that tracked Brown's trip from Minnesota to Tallahassee.  The records showed that Brown

5

traveled from Minneapolis to Chicago, from Chicago to Memphis, and from Memphis to Atlanta as "Michael Branch."  He used his correct name when he traveled from Atlanta to Tallahassee.  The government used this evidence to show that Brown "inten[ded] to conceal his identity" and further noted that he had traveled with his girlfriend and a child, which he was not allowed to do, and received a military discount even though he did not serve in the military.  The government concluded by asking the court to sentence Brown at the upper end of the guideline range.

The district court sentenced Brown to thirty months in prison followed by five years of supervised release.  The district court concluded that "[t]he layers of willfulness . . . [were] astounding," finding that Brown had initially registered in Minnesota, failed to register when he fled to Tallahassee, assumed a false name, and lied to get a military discount.  The court found Agent Bedard credible and rejected any notion that there were any "misunderstandings or missteps in Minnesota."  The district court determined that the thirty-month sentence "addresse[d] the seriousness of the offense" and was "sufficient, but not greater than necessary to accomplish the purposes of sentencing."  The district court noted that it "fully considered all the factors set out in 18 U.S.C. [§] 3553(a), including the applicable guidelines and policy statements issued by the Sentencing Commission."  Brown did not object to the sentence.

## DISCUSSION

Brown argues on appeal that the five-year term of supervised release contradicted his plea agreement. Brown also contends that the district court abused its discretion when it found Agent Bedard's testimony credible and that, as a result, his sentence at the top end of the guideline range was unreasonable. We address each argument in turn.

### *Supervised Release*

Brown argues that the district court erred when it imposed a five-year term of supervised release because the plea agreement said he faced a three-year term. Because Brown didn't object to his supervised-release sentence, we review it for plain error. United States v. Hall, 314 F.3d 565, 566 (11th Cir. 2002). Under plain error review, Brown must show (1) that an error occurred, (2) that was plain, and (3) that affected his substantial rights. United States v. DiFalco, 837 F.3d 1207, 1221 (11th Cir. 2016). If these three conditions are satisfied, we must determine whether "the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. "The plain error test is difficult to meet and places a daunting obstacle before the appellant"; we reverse for plain error only "in those circumstances in which a miscarriage of justice would otherwise result." Id.

Here, the plea agreement and the district court incorrectly advised Brown that the maximum term of supervised release was three years, instead of life.[1]  Thus, the error in this case was plain.  See United States v. Brown, 586 F.3d 1342, 1346 (11th Cir. 2009).  But Brown has not shown that his substantial rights were affected.  In Brown (same name but different defendant), we held that the defendant was not prejudiced where he was informed of an incorrect term of supervised release in his plea agreement, but he "did not object to the [presentence investigation report's] correct statement concerning his statutory range of supervised release" and "stated at the sentencing hearing that he discussed the [report] with his attorney and understood its content."  Id. at 1346–47.  Our Brown also did not object to the presentence investigation report's recommendation of a five-year term of supervised release, did not raise the issue in his sentencing memorandum, admitted at the sentence hearing that he discussed the report with his attorney and understood its terms, and did not object to the five-year term after the district court imposed it at

---

[1]  Brown also argues that, under 18 U.S.C. section 3583(b)(2), the maximum term of supervised release the district court could have imposed was three years.  He is incorrect.  Section 3583(b)(2) provides that, "[e]xcept as otherwise provided, the authorized terms of supervised release are[,] for a Class C or Class D felony, not more than three years." (emphasis added).  Although a failure-to-register charge is a Class C felony, see 18 U.S.C. § 3559(a)(3), section 3583(b)(2) is inapplicable here because section 3583(k) "otherwise provide[s]" the term of supervised release for a conviction under 18 U.S.C. section 2250.  And according to section 3583(k), a defendant convicted under section 2250 is subject to a minimum term of supervised release of five years and a maximum term of life.

the hearing. He, too, has failed to show that he was prejudiced by the mistake in the plea agreement.

*Agent Bedard's Testimony and the Reasonableness of Brown's Sentence*

Brown argues that the district court erred when it found Agent Bedard's testimony credible because the probation officer "testified falsely and[] manipulated the true facts." Specifically, Brown argues that Agent Bedard (1) did not "tell . . . the full and true story" about the woman who contacted him in April 2019 and (2) lied during his testimony that Brown knew he had a hearing pending in April 2018. Brown also argues that the district court erred by considering Agent Bedard's testimony about the transcript of the Minnesota state court hearing because it was hearsay. The district court's reliance on Agent Bedard's testimony, Brown says, led it to impose an unreasonable sentence at the top end of the guideline range.

We review the reasonableness of a district court's sentence for abuse of discretion. Gall v. United States, 552 U.S. 38, 51 (2007). To determine if a sentence is reasonable, we use a two-step approach where we first "review to ensure that the district court committed no significant procedural error, such as . . . selecting a sentence based on clearly erroneous facts." United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009) (internal quotation marks omitted). If we conclude that the sentence is procedurally sound, the second step is to review the substantive reasonableness of the sentence, which requires us to consider the totality of the

9

circumstances.  United States v. Alfaro-Moncada, 607 F.3d 720, 735 (11th Cir. 2010).  "A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it '(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors.'"  United States v. Rosales-Bruno, 789 F.3d 1249, 1256 (11th Cir. 2015) (quoting United States v. Irey, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc)).  Brown has the burden to show that his sentence is unreasonable. See United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008).

First, Brown cannot show that the district court based its sentence on clearly erroneous facts when it found Agent Bedard's testimony credible.  "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).  We must accept the district court's credibility determination "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it."  Id.  Moreover, we must affirm a district court's credibility determinations if they are "plausible in light of the record viewed in its entirety."  Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985).  Here, Brown failed to show that the district court erred in

10

crediting Agent Bedard's testimony.  The record does not contradict Agent Bedard's statement that a woman called him in April 2019 to report that Brown had contact with a minor.  Agent Bedard's testimony that Brown knew he had a court date in April 2018 is supported by the halfway house report from Brown's caseworker, which stated that (1) Brown's "performance improved until he learned that he would have to go to court . . . for fail[ing] to register," and (2) Brown "swore he would stick it out until court on 4/26/2018."   Viewing the record as a whole, we cannot say that Agent Bedard's testimony was "so inconsistent or improbable on its face that no reasonable factfinder could accept it."  Ramirez-Chilel, 289 F.3d at 749.

Second, Brown has failed to establish that the district court improperly relied on hearsay testimony.  A district court has wide discretion to consider relevant information at sentencing "without regard to [the] admissibility [of the information] under the rules of evidence applicable at trial."  U.S.S.G. § 6A1.3(a); see also Pepper v. United States, 562 U.S. 476, 480 (2011) (recognizing that "sentencing judges exercise a wide discretion in the types of evidence they may consider when imposing sentence").  This discretion includes considering hearsay testimony to determine an appropriate sentence so long as the overall record provides "sufficient indicia of reliability."  United States v. Baptiste, 935 F.3d 1304, 1308 (11th Cir. 2019).  To successfully challenge a sentence based on the court's erroneous consideration of hearsay evidence, a defendant must show that the hearsay testimony was "materially

false or unreliable" and that it served as the basis for the ultimate sentence. See United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir. 2010). Because Brown did not challenge Agent Bedard's testimony at sentencing, we review for plain error. See United States v. Shelton, 400 F.3d 1325, 1328 (11th Cir. 2005).

Here, we see no error, much less a plain one. Agent Bedard's testimony about the discrepancies in the Minnesota court transcript was not hearsay because Agent Bedard was testifying as to what he would have said had he been at the hearing. Although Agent Bedard's testimony that Brown had defrauded a woman and contacted her minor children was based on hearsay—the woman's phone call—that testimony did not serve as a basis for Brown's ultimate sentence. See Ghertler, 605 F.3d at 1269. The district court relied on Brown's willful decision to abscond, travel to Florida under a false name, and not register as a sex offender upon moving for its sentencing decision, not on the allegations that he defrauded the woman and came into contact with her children. And, to the extent that the halfway house records suggesting that Brown did not know he had a court date in April 2018 were hearsay, their contents were corroborated by Agent Bedard's own testimony that he told Brown about the court date before Brown went on the run.

Finally, Brown's sentence was substantively reasonable. As the district court explained, there were several aggravating factors supporting a guideline sentence: Brown absconded from another state; used a fake identity to travel to Florida; and

knowingly chose not to register in Florida.  We generally expect sentences within the guideline range, like this one, to be reasonable.  See United States v. Stanley, 739 F.3d 633, 656 (11th Cir. 2014) ("[W]hen the district court imposes a sentence within the advisory [g]uidelines range, we ordinarily will expect that choice to be a reasonable one.").   And the sentence is well below the 120-month statutory maximum, which is also another indication that it is reasonable.  Id. ("A sentence imposed well below the statutory maximum penalty is an indicator of a reasonable sentence.").

   **AFFIRMED.**