[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-17010
Non-Argument Calendar
_____

D.C. Docket No. 0:16-cr-60078-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIPPA MARCELLE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 27, 2017)

Before ED CARNES, Chief Judge, JORDAN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Phillippa Marcelle pleaded guilty to obstruction of a federal audit in

violation of 18 U.S.C. § 1516 and was sentenced to six months in prison and six months of home detention.  She contends that the district court engaged in impermissible double counting and that her sentence was procedurally and substantively unreasonable.

## I.

### A.

According to the factual proffer submitted with her guilty plea, Marcelle incorporated Philuvine Development Center, Inc. in November 2009.  She was listed as its agent and her mother was listed as its president.  Through Marcelle, the Center applied for approximately $1.6 million in grant funding from the U.S. Department of Education.  The grant was intended to "assist seasonal migrant farm workers and their families by helping them obtain their GED or high school equivalency degree, and then help them to gain employment or to be placed in an institution of higher education or secondary education or training."  The money was to be spread over a five-year period.

In August 2010, the Department awarded the Center a grant in the amount of $339,854.00 for the period running from July 1, 2010, to June 3, 2011.  To get around a rule that required grant money to be spent within three days of being drawn down, Marcelle's mother incorporated Galaxy Business Solutions, LLC and opened a corporate bank account.  As she submitted draw down requests and

2

received payments from the Department, Marcelle transferred the grant money into this account so that she could spend it over the course of more than three days. She also admitted that she did not want the Department to know what she was doing with the money.

And for good reason. Marcelle spent a sizable portion of the grant money she received on herself — paying for trips, concerts, restaurant visits, clothes, etc. She even spent $3,000 on a matchmaking service. Although there was some evidence that Marcelle's mother also misused grant funds, Marcelle stated that her mother was only doing what Marcelle directed her to do.

Unsurprisingly, when federal auditors performed a site visit and found out about the Galaxy account, they wanted more information. After one of the auditors asked for bank statements from both the Center's bank account and Galaxy's bank account, Marcelle "provided very little." And she had altered the bank statements she did provide to conceal her illicit expenditures. For instance, she redacted at least one check from the statements.

## B.

Marcelle was charged with one count of conspiracy to steal government funds, two counts of theft of government funds, and one count of obstructing a federal audit. In exchange for her agreement to plead guilty to the obstruction charge, the government agreed to seek the dismissal of the conspiracy and theft

charges.

The presentence investigation report calculated a total offense level of 13 after applying a base offense level of 14, a 2-level enhancement under United States Sentencing Guidelines § 2J1.2(b)(3) for altering a substantial number of documents, a 2-level reduction for acceptance of responsibility, and a 1-level reduction for providing substantial assistance to the government. When combined with Marcelle's criminal history category of I, that offense level resulted in an advisory guidelines range of 12 to 18 months. Because Marcelle fell within Zone C of the Sentencing Table, the district court had the option of allowing her to serve a portion of her sentence under home detention.

At sentencing, Marcelle objected to the application of the altering documents enhancement. She argued that, because her obstruction conviction was premised on her alteration of bank statements, applying that enhancement would amount to impermissible double counting. The government disagreed. And the district court overruled her objection.

Marcelle also argued for a downward variance based on the factors listed in 18 U.S.C. § 3553(a). In her motion and at sentencing, her attorney emphasized that she was the sole caregiver for her four-year-old son and that her incarceration would have a devastating effect on him. He also pointed out that, while Marcelle had diverted a significant amount of grant money to her own purchases, she also

4

spent a significant amount on things that were actually for the Center — e.g., office equipment, hiring teachers.  And he informed the court that she had both a bachelor's and a master's degree.

Marcelle apologized to the district court, saying she was arrogant, stupid, and dumb.  She said she initially started out intending to help people, but that things didn't finish that way.  Marcelle said she had tried to live a better life for her son and begged for mercy for his sake, saying she would not ask for it if not for him.

The government opposed the downward variance.  It emphasized that her crime was serious and that, while it was sympathetic to Marcelle's son, a lot of people have families that are harmed by their incarceration.  The government acknowledged that Marcelle was not a risk for recidivism, but argued that the district court should consider the need to deter other defendants, including those who don't have children.

The district court denied Marcelle's request for a downward variance and sentenced her to six months in prison followed by six months of house arrest.  The district court also ordered her to pay restitution in the amount of $62,137.75 and a $100 special assessment.

## II.

Marcelle was convicted of a violation of 18 U.S.C. § 1516(a), which

provides:

> Whoever, with intent to deceive or defraud the United States, endeavors to influence, obstruct, or impede a Federal auditor in the performance of official duties relating to a person, entity, or program receiving in excess of $100,000, directly or indirectly, from the United States in any 1 year period under a . . . grant . . . shall be fined under this title, or imprisoned not more than 5 years, or both.

The guidelines range for defendants convicted of violating § 1516(a) is calculated using U.S.S.G. § 2J1.2, the obstruction of justice guideline.  U.S.S.G. § 2J1.2 cmt. Statutory Provisions (2015).

Section 2J1.2 establishes a base offense level of 14 for obstruction offenses, but calls for a 2-level enhancement where "the offense . . . involved the destruction, alteration, or fabrication of a substantial number of records, documents, or tangible objects . . . ."  Id. § 2J1.2(a), (b)(3).  Marcelle contends that because her obstruction of a federal audit conviction was premised on altering bank statements, applying the 2-level alteration of documents enhancement to her amounts to impermissible double counting.[1]  We disagree.

"We review de novo a claim of double counting under the Guidelines."

---

[1] Marcelle did not argue before the district court and does not argue in her briefs to this Court that this enhancement should not apply to her because she did not alter a "substantial number" of documents as § 2J1.2 requires.  As a result, she has waived that argument.  Juris v. Inamed Corp., 685 F.3d 1294, 1325 (11th Cir. 2012) ("If a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first clearly present it to the district court . . . in such a way as to afford the district court an opportunity to recognize and rule on it."); United States v. Willis, 649 F.3d 1248, 1254 (11th Cir. 2011) ("A party seeking to raise a claim or issue on appeal must plainly and prominently so indicate . . . .  Where a party fails to abide by this simple requirement, he has waived his right to have the court consider that argument.") (quotation marks omitted).

6

United States v. Kapordelis, 569 F.3d 1291, 1315 (11th Cir. 2009). "Double counting occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." Id. (quotation marks omitted).

The problem with Marcelle's argument is that the base offense level for obstruction does not take into account her alteration of documents. See United States v. Bracciale, 374 F.3d 998, 1009–10 (11th Cir. 2004). The obstruction guideline applies to a variety of criminal offenses besides obstructing a federal audit and even obstruction of a federal audit could be accomplished in ways that do not involve altering documents. "[I]t is rational for the Sentencing Commission to use § [2J1.2] to establish a base offense level of [14] for variety of fraud crimes, and to allow the [alteration-of-documents] enhancement to apply in cases like" Marcelle's. See id. at 1010.

Doing so does not amount to impermissible double-counting. See id. at 1009–10; see also United States v. Phillips, 363 F.3d 1167 (11th Cir. 2004); United States v. Walters, 775 F.3d 778, 783–85 (6th Cir. 2015). Instead, it is a permissible way for the Sentencing Commission to indicate that obstruction offenses are more serious when they involve the alteration of a substantial number of documents. Phillips, 363 F.3d at 1169. The district court did not err by

7

applying that enhancement to Marcelle.

## III.

Marcelle next contends that her sentence was procedurally unreasonable. "A sentence may be procedurally unreasonable if the district court improperly calculates the Guidelines range, treats the Guidelines as mandatory rather than advisory, fails to consider the appropriate statutory factors, selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." United States v. Gonzalez, 550 F.3d 1319, 1323 (11th Cir. 2008). Marcelle argues that the district court (1) improperly truncated her attorney's argument at the sentence hearing, and (2) failed to consider all of the factors listed in § 3553(a). We address each argument in turn.

## A.

Throughout the sentence hearing, the district court displayed some impatience for the proceeding to be over. First, after defense counsel had argued that including the alteration of documents enhancement would be impermissible double counting for what eventually amounted to nearly four transcript pages, the district court cut him off. It said: "All right. I have heard enough. What does the government say?" Then, after the government had argued for roughly the same amount of time, the district court said, "I need for you to wrap up." The government continued for two more paragraphs. Then the district court overruled

Marcelle's objection.

Marcelle's counsel then proceeded to argue for a variance.  And again, after a little less than four transcript pages, the following exchange occured:

> THE COURT:  I need for you to begin to wrap up.
> [MARCELLE'S COUNSEL]:  Yes, Your Honor, I will.
> THE COURT:  I have said very little.  All I have heard from is the
>       lawyers.
> [COUNSEL]:  Yes.
> THE COURT:  And —
> [COUNSEL]: I'm done, Your Honor.  That's fine.
> THE COURT: — you need to wrap up.
> [COUNSEL]:  Yes, I'm done, Your Honor.

Marcelle was then permitted to allocute and was not cut off.[2]  The government was next and the district court soon said, "I need for you to begin to wrap up" — this time after only two and a half transcript pages.  After another paragraph of argument from the government, the district court asked a question.  The government began to answer, but the district court interjected again with another admonition to "wrap up."

All of that notwithstanding, at the end of the hearing, the district court asked Marcelle's attorney:  "Does the defense have any objections to the manner or procedure in which sentence has been imposed or that this hearing has been conducted?"  Counsel responded:  "No, Your Honor."  The district court then

---

[2] At the end of Marcelle's allocution, the district court did tell counsel to "[h]ave [his] client sit down."  But it then inquired:  "Anything else, Ms. Marcelle?"  So the district court's direction that Marcelle should sit down was not an instruction to stop talking.

asked Marcelle if she had any objections, to which she responded: "No."

Because Marcelle "did not object to the procedural reasonableness [of her sentence] at the time of [her] sentencing, we review for plain error." United States v. Vandergrift, 754 F.3d 1303, 1307 (11th Cir. 2014). So we can reverse the district court only if it is shown "(1) an error occurred, (2) the error was plain, and (3) the error affected [Marcelle's] substantial rights." United States v. DiFalco, 837 F.3d 1207, 1220 (11th Cir. 2016). And even if that showing is made, we will reverse "only if (4) the error seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings." Id. at 1221. We cannot say that standard has been met here.

Defendants and their counsel do not have a right to unlimited argument time. See United States v. Ransfer, 749 F.3d 914, 937 (11th Cir. 2014) ("The period of time to be allotted for attorneys' closing arguments is within the sound discretion of the district court.") (quotation marks omitted). We cannot say that the district court plainly erred. The only explanation of what her counsel would have said if he hadn't been cut off that Marcelle provides in her briefs to this Court is a statement that counsel was cut off "at the point where he was beginning to describe the alternative sentencing options available." But her counsel did not object to ending his argument when directed to by the district court or protest that he still had more to say. It was not plain error for the district court to conclude that, when

counsel opted to simply sit down after being interrupted, he had left nothing critical unsaid.  We also note that the district court encouraged concision from both the government and the defense.[3]

## B.

Marcelle also contends that the district court did not adequately consider her arguments for a downward variance.  In particular, she argues that the district court failed to consider her arguments about the hardship that a term of incarceration would impose on her son and failed to consider alternative sentencing arrangements.  That argument is without merit.

The district court stated that it imposed its sentence "after consideration of statements by all the parties" and after it "considered all of the statutory factors as set forth in 18 U.S.C., Section 3553(a)."  Then, after adopting the factual findings in the PSR, it said that it found "no reason to depart or vary from a sentence called for by the guidelines."[4]  The fact that, when it imposed its sentence, the district court did not explicitly mention Marcelle's argument about her child or talk about alternative sentences, appeared ambivalent at sentencing, and "listened to [her] argument without visible reaction" does not amount to plain error.  See Rita v.

---

[3] To the extent that Marcelle's references to due process concerns in her reply brief were meant to raise a constitutional argument regarding the district court's manner of conducting her sentence hearing, she raised it too late.  United States v. Evans, 473 F.3d 1115, 1120 (11th Cir. 2006) ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (quotation marks omitted).

[4] This last statement refutes Marcelle's argument that the district court failed to rule on her motion for a variance on the record.

11

United States, 551 U.S. 338, 356–57, 127 S. Ct. 2456, 2468 (2007) ("[W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require a lengthy explanation."); United States v. Sanchez, 586 F.3d 918, 967 (11th Cir. 2009) (quotation marks and citation omitted) ("In general, the district court is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors. . . . It is sufficient that the district court considers the defendant's arguments at sentencing and states that it has taken the § 3553(a) factors into account."). Moreover, as far as alternatives to imprisonment are concerned, it is clear the district court did consider them. After all, Marcelle will serve the final six months of her sentence under house arrest instead of in a prison cell.

## IV.

Marcelle mentions the substantive reasonableness of her sentence twice in her briefs to this Court. The closest she comes to explaining why her sentence should be vacated on substantive reasonableness grounds is a conclusory statement that, if we conclude the district court's sentence was not procedurally unreasonable, we should nonetheless reverse because it was substantively unreasonable.[5] She provides no further explanation of why that is the case. That is

---

[5] She also claims that, because her sentence was procedurally unreasonable, the record does not allow her to mount a substantive reasonableness challenge. Because we have concluded that her sentence was not procedurally unreasonable, we reject this argument.

not sufficient to raise an argument with regards to substantive reasonableness in this Court.  Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

V.

In sum, the district court did not err by applying an alteration of documents enhancement, Marcelle's sentence was not procedurally unreasonable, and she abandoned any argument that her sentence was substantively unreasonable.

**AFFIRMED.**