[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-14571
_____

D.C. Docket No. 1:16-cr-00571-CEM-CSC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DARIN LEWIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(June 26, 2019)

Before ED CARNES, Chief Judge, JULIE CARNES, and CLEVENGER,* Circuit
Judges.

---

* Honorable Raymond C. Clevenger, III, United States Circuit Judge for the Federal Circuit,
sitting by designation.

ED CARNES, Chief Judge:

Before pleading guilty to one count of conspiracy to commit wire fraud, Darin Lewis entered into a plea bargain in which he waived his right to appeal his sentence except under certain limited circumstances, none of which applies. Despite the waiver in his plea bargain, Lewis has appealed his thirty-month sentence, contending that it is substantively unreasonable. His attempt to sidestep his appeal waiver is based on the government having joined in his objection to the district court that the sentence is unreasonable, which he argues amounts to a waiver by the government of its right to enforce his appeal waiver. The argument is a little clever, but not at all convincing.

## I.    Facts and Procedural History

In June 2014, the Dale County Water Authority (County Water), which provides water to businesses and residences in and around Ozark, Alabama, received a $1.6 million government loan to replace some water lines in the county. County Water hired Roberson Excavation, a company owned by Billy Ray Roberson, to be the general contractor on the project.

The pipe replacement work was scheduled to begin on July 9, 2014, and the contract required Roberson Excavation to complete the work by November 5, 2014. If it failed to meet the deadline, the company would incur a $500-per-day penalty. After installing the new water lines, Roberson Excavation was also

2

responsible for: (1) pressure testing the lines to ensure that they did not leak; (2) flushing the lines to clear sediment or debris and treating them with disinfectant; and (3) drawing water samples and taking them to a licensed lab for bacteriological testing.  Roberson Excavation failed to install the new water lines by November 5, 2014, and soon thereafter County Water started assessing the $500-per-day penalty against the company.

On January 22, 2015, Billy Ray Roberson hired Darin Lewis to work on the project.  He had experience in excavation and boring.  Lewis' initial assignment was to oversee the boring of a water line under a highway in order to link two segments of newly installed lines.  After Lewis did that work, Roberson asked him to stay on the water line project as a site supervisor.

At some point, Lewis and Roberson agreed that they would skip some of the testing that the contract required and falsify documents to indicate that it had been done.  During the pressure testing that was done, Lewis manipulated the flow of water through the lines to hide the leaks that he knew or reasonably believed existed.  Roberson instructed Lewis to give the falsified test results to the project engineer, who worked for a separate company that County Water had hired for the project, and Lewis did so.

Lewis also followed Roberson's instruction to fake the bacteriological tests. He did that by collecting water samples from a fire hydrant that was connected to

3

lines he knew were bacteria-free.  At Roberson's direction, Lewis falsely recorded

the location where he had obtained those samples and then submitted the samples

to a lab.  The lab reported that the samples did not contain bacteria, and Roberson

Excavation emailed the falsified bacteriological testing report to the project

engineer and requested that the company be paid for its work on the project.  The

request for payment falsely stated that all pressure and bacteriological testing had

been completed according to the applicable standards.

A grand jury indicted Roberson Excavation, Roberson, and Lewis for one

count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343, 371.

Lewis pleaded guilty under a written plea agreement.  In that agreement, he

admitted the facts of the conspiracy and agreed to waive his right to appeal his

sentence or to collaterally attack his conviction or sentence in any post-conviction

proceeding.  The appeal waiver part of the plea agreement includes an underlined

heading in bold, capital letters that reads: "**<u>DEFENDANT'S WAIVER OF</u>**

**<u>APPEAL AND COLLATERAL ATTACK</u>**."  The paragraph under that heading

states:

> Understanding that 18 U.S.C. § 3742 provides for appeal by a
> defendant of the sentence under certain circumstances, the defendant
> expressly waives any and all rights conferred by 18 U.S.C. § 3742 to
> appeal the sentence.  The defendant also waives the right to attack his
> conviction and sentence in any post-conviction proceeding, including
> proceedings pursuant to 28 U.S.C. § 2255.  This waiver does not
> include the right to appeal on the grounds of ineffective assistance of

4

counsel or prosecutorial misconduct, or to collaterally attack the sentence on those grounds.

It is undisputed that the only exceptions to the appeal waiver (ineffective assistance of counsel and prosecutorial misconduct) do not apply here.

The plea agreement also states that Lewis "understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the United States Sentencing Guidelines, if any, applicable to [Lewis'] case will be determined solely by the Court, with the assistance of Probation." Lewis agreed that he "understands that the Government can only make a recommendation as to the appropriate sentence, which is not binding on the Court." For its part, the government agreed that it would recommend a sentence no greater than the bottom of the advisory guidelines range as calculated by the court at the sentence hearing.

After Lewis pleaded guilty, the government superseded the indictment against Roberson Excavation and Roberson with a new one charging them with conspiracy to commit wire fraud, substantive wire fraud, conspiracy to defraud the United States, and making a false statement. Those two defendants proceeded to trial, which was scheduled to last for nine days. The trial ended on the fourth day when the government agreed to dismiss all charges against Roberson individually, and Roberson Excavation agreed to plead guilty to one count of wire fraud. The company was later sentenced to pay a $60,000 fine.

5

As for Lewis, his presentence investigation report noted that he had not entered the conspiracy until January 22, 2015, and it calculated the loss amount resulting from his conduct as $42,048.72.  His base offense level was 12, but with two levels subtracted for acceptance of responsibility his adjusted offense level was 10.  The PSR detailed Lewis' lengthy criminal history but put him in category I because all of his convictions occurred before 2003 and, as a result, were too remote to result in criminal history points.

The PSR noted, however, that Lewis did have eight prior felony convictions and seven misdemeanors, and if the points for those crimes had counted, his criminal history category would have been VI.  The PSR stated that "the overall types of offenses and regularity of his criminal activity indicate that there may be a need to depart based on the likelihood he will commit other crimes."  It calculated his guidelines range as six to twelve months imprisonment.

The government filed a U.S.S.G. § 5K1.1 motion requesting a three-level downward departure because of Lewis' substantial assistance, which would have resulted in a guidelines range of zero to six months imprisonment.  The motion stated that Lewis had begun cooperating soon after the investigation started, that his assistance was "significant and useful," and that as far as the government could tell, the information he provided was "truthful and complete."  The motion did note that the information Lewis had provided "was, to some extent, inconsistent with

6

the information provided by other witnesses," but the government "was never able to confirm that Lewis's information — as opposed to the other witnesses' information — was false." His assistance was "extensive" and required him to travel to a number of different locations in Alabama, hours from his Florida home.

The court held a joint sentence hearing for Roberson Excavation and Lewis. Because Roberson himself was on a cruise to Alaska at the time, another person appeared at the hearing as the representative for the company. After hearing from counsel, the court adopted the facts and guidelines calculations of the PSR. Lewis asked the court to depart down four levels instead of the three that the government had requested for substantial assistance. The court questioned why the government had even filed a § 5K1.1 substantial assistance motion when it appeared that the government either did not believe Lewis was telling the truth or thought a jury would not believe him, given that the government had "pulled the plug" on the trial of his co-conspirators four days into it.

The court questioned how the government had benefited from Lewis' cooperation. The government explained that Lewis and another witness had provided "radically different information," which probably would have destroyed the credibility of both of them at trial, but it did not "disbelieve[ ]" Lewis and did not think he had "intentionally misled the government." The government added that Lewis' "self-admission" had also incriminated Roberson Excavation, which

7

helped it obtain the company's guilty plea.  After that discussion, the court granted the government's § 5K1.1 motion and departed downward three levels, which brought Lewis' offense level down to 7 and resulted in a guidelines range of zero to six months imprisonment.  The statutory maximum for the offense was still five years.  See 18 U.S.C. § 371.

Lewis asked for no imprisonment, and the government, carrying out its obligations under the terms of the plea bargain, agreed that a sentence of probation was appropriate.  Lewis argued that it would be a "travesty of justice" to let the owner of the company (Roberson) off the hook and imprison his employee.  After hearing from counsel, the court read a detailed "sentencing statement."

The court's statement explains why it decided to reject Lewis' arguments and the government's recommendation for probation and instead varied upward to sentence him to 30 months imprisonment.  The court summarized its reasons as follows:

> [O]ne, defendant's mens rea, his recklessness in exposing an entire community to potentially contaminated water; two, defendant's role as the person who actually falsified the [bacteriological] testing; three, the fact that defendant's recklessness is extreme and erodes the public's confidence in a public utility's ability to provide service in a safe and reliable manner; and, four, to afford adequate deterrence to his criminal conduct.

Lewis' counsel objected that the sentence was substantively unreasonable, calling it "outrageous."  The court stated that the objection was preserved for appeal and

8

that Lewis had certain appeal rights to the extent his plea agreement permitted them.

When the court asked the parties if they had "anything further," the government said no, but then the following exchange occurred:

> [LEWIS' COUNSEL]: I'm curious as to why the government has no objection to the sentence, considering that in the plea agreement they agreed to recommend a sentence at the bottom of the advisory guideline range and have recommended probation to the Court and yet, with an upward variance, they now sit there mute and say nothing when it comes to their opportunity to object to the sentence. So I'm confused by that, Your Honor.
>
> [THE COURT]: All right. [Lewis' counsel] has indicated that he was expecting an objection from the government. From my perspective, the government agreed to make a guideline sentence [recommendation], which they did. I read through the plea agreement, and the defendant was informed in the plea agreement, as did the government, that the Court was not bound by the plea agreement. Notwithstanding all that, would the government like to join in the defense's objection over the Court's sentence?
>
> [COUNSEL FOR GOVERNMENT]: Yes, Your Honor.
>
> [THE COURT]: All right. Both sentences — or both objections are preserved for the record subject to appeal.

Lewis interprets that exchange, specifically the government joining his objection that the sentence was substantively unreasonable, as an implicit waiver by the government of its right to invoke Lewis' earlier waiver of his right to appeal. A waiver of a waiver, if you will. The government did not interpret it that way, and when Lewis appealed his sentence the government filed a motion to

9

dismiss the appeal because of the appeal waiver.  That motion was carried with the appeal, which is not the best thing to do.  See United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997).  Regardless, here we are.

## II. Discussion

"A sentence appeal waiver must be made knowingly and voluntarily." United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008) (citing United States v. Weaver, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001)).  "The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver."  Id. (citing United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993)).  It is undisputed that Lewis' appeal waiver meets those requirements.  It is also undisputed that none of the exceptions to Lewis' appeal waiver applies.  That would appear to be the end of things.  See United States v. DiFalco, 837 F.3d 1207, 1215 (11th Cir. 2016) (stating that when an appeal waiver applies, a defendant is barred from challenging his sentence, and this Court is "required to dismiss his appeal").

And it would be the end of things, but for Lewis' argument that by joining his objection to the sentence the government acted in a way that was inconsistent with its right to enforce the appeal waiver and thereby waived that right.  The flaw in Lewis' argument is its minor premise, which is that the government's action in

10

joining his objection to the sentence in the district court is inconsistent with its action in moving to dismiss his appeal from that sentence on the ground stated in the objection. It is not. The government's action is, if anything, more consistent with the terms of the plea bargain than any other action it could have taken when Lewis called it out after the court stated it was going to sentence him to a harsher sentence than the government had recommended.

When it comes to enforcing appeal waivers, we have emphasized that "what really counts . . . is what the defendant and the government agreed to in the plea bargain." United States v. Bascomb, 451 F.3d 1292, 1296 (11th Cir. 2006). In return for Lewis' guilty plea and the waiver of his right to appeal, the government promised to recommend a sentence at the bottom of the guidelines range, thereby giving up its right to request a higher sentence. When it came time to act, the government not only went the full distance required under the plea agreement by recommending a bottom-of-the-range sentence, but when Lewis called on it the government went the extra mile by joining his objection that the higher sentence was substantively unreasonable. Lewis probably was not entitled to have the government do that, but it did.

If we were to write Lewis' position into circuit law, it would create a disincentive for the government that could work to the disadvantage of future defendants. Consider a case like this one where in exchange for an appeal waiver

11

and other consideration the government has agreed to make a particular recommendation of leniency on behalf of the defendant.  The court considers but rejects the government's recommendation and gives the defendant a harsher sentence.  The defendant asks the government to join his objection, hoping that adding its weight to his objection may convince the district court to reconsider and lower the sentence.  If we adopt Lewis' position, the government will know in a future case that by joining the defendant's objection it will lose the benefit of the appeal waiver, which may be one of the primary benefits it sought from the plea bargain.  Better for defendants as a class that the government not be discouraged from joining a defendant's objection to a sentence longer than the one that the government promised to, and did, recommend.

While Lewis did not get the sentence he wanted and that the government recommended, he understood and agreed up front that regardless of any recommendations, "the sentence and the United States Sentencing Guidelines, if any, applicable to [his] case will be determined solely by the Court, with the assistance of Probation."  Which is what happened.

If Lewis had wanted the appeal waiver to be conditioned on the court imposing the sentence that the government recommended for him, he should have bargained for that.  See Fed. R. Crim. P. 11(c)(1)(C).  The government might not have agreed to a deal that conditioned the appeal waiver in that manner, or the

12

court may not have accepted it.  We don't know.  We do know that the plea bargain did not condition the appeal waiver on the district court following the government's recommendation, or on the government not joining an objection the defendant made to the sentence.  Lewis got all that he was promised, and all that he was entitled to receive, under the deal that was struck.

The classic definition of waiver is "an intentional relinquishment or abandonment of a known right or privilege."  Johnson v. Zerbst, 304 U.S. 458, 464 (1938).  In the plea bargain Lewis intentionally and knowingly relinquished, or at least severely curtailed, his right to appeal.  See id.  The government, by doing what it had promised to do in that bargain, did not intentionally relinquish or curtail any right it received in the bargain, including its right to enforce the appeal waiver.  We have recognized that when the parties have "struck a deal that include[s] the appeal waiver," a decision "altering the terms of that waiver would . . . cut the heart out of the bargain."  Bascomb, 451 F.3d at 1295.  We will not perform a waiverectomy.

The three decisions Lewis cites from other circuits are off point.  The Fourth Circuit in United States v. Metzger, 3 F.3d 756 (4th Cir. 1993), held that by failing to assert it, the government had waived any argument that the defendant's waiver of his right of direct appeal should operate as a procedural bar in a 28 U.S.C.

13

§ 2255 proceeding. Id. at 757. Here the government has asserted Lewis' appeal waiver from the beginning, first in a motion to dismiss the appeal and then in its brief.

The Tenth Circuit held in United States v. Contreras-Ramos, 457 F.3d 1144 (10th Cir. 2006), that "where the government explicitly cites an appeal waiver in a letter to the Court in response to an Anders brief, the waiver is not waived and must be enforced" if it meets the requirements of circuit precedent for appeal waivers. Id. at 1145 (citing United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004)). That does not help Lewis either.

Finally, Lewis quotes a sentence from a Ninth Circuit decision stating that: "If the government can 'waive waiver' implicitly by failing to assert it, certainly the government can do so explicitly, as occurred here." United States v. Garcia-Lopez, 309 F.3d 1121, 1123 (9th Cir. 2002). There are two reasons that statement means nothing for this case. First, the court was talking about the failure to assert an appeal waiver on appeal, not about any actions or inactions in the district court. Second, the statement merely states the obvious: anything that can be waived implicitly can also be waived explicitly. It says nothing about what amounts to an implicit waiver. Lewis has not presented any authority, from the Ninth Circuit or elsewhere, for his position that by joining a defense objection in the district court the government forfeits or waives its right to enforce an appeal waiver.

14

For these reasons, Lewis' appeal is **DISMISSED**.