[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14015

_____

D.C. Docket No. 2:16-cr-00560-RBD-WC-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

TAURIO KORTAVIOUS HARRIS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(January 9, 2020)

Before ED CARNES, Chief Judge, ROSENBAUM, Circuit Judge, and VINSON,[*]
District Judge.

_____

[*] Honorable C. Roger Vinson, United States District Judge for the Northern District of
Florida, sitting by designation.

PER CURIAM:

Taurio Harris entered a written plea agreement with the government and later pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). As part of his plea agreement, he waived his right to appeal or collaterally attack his sentence, except for claims of ineffective assistance of counsel or prosecutorial misconduct. He specifically waived the right to challenge his sentence based on the district court's determination of his guidelines range.

The district court calculated Harris' guidelines range as 92 to 115 months imprisonment, and he faced a statutory maximum of ten years. He was sentenced to 92 months, the bottom end of the range. He appeals his sentence, contending that his guidelines range was improperly determined based on a cross-reference to voluntary manslaughter.

I.

The government filed a motion to dismiss Harris' appeal based on the appeal waiver. Harris did not file a response. A motions panel of this Court issued an order denying the government's motion and stating that the waiver was invalid and unenforceable.

In its brief on the merits, the government has renewed its contention that the appeal waiver bars Harris' appeal. It urges us, as the panel considering the appeal on the merits, to vacate the motion panel's earlier order. We have the authority to

2

do that.  See 11th Cir. R. 27-1(g) ("A ruling on a motion or other interlocutory matter, whether entered by a single judge or a panel, is not binding upon the panel to which the appeal is assigned on the merits, and the merits panel may alter, amend, or vacate it.").  It is late, but not too late, to determine whether the appeal waiver is enforceable.  See id.; see also United States v. Buchanan, 131 F.3d 1005, 1008 (11th Cir. 1997) ("Motions to dismiss based upon sentence appeal waivers should be decided at the earliest stage in the process at which it is feasible to do so. . . .").

We review de novo the validity of an appeal waiver.  United States v. Johnson, 541 F.3d 1064, 1066 (11th Cir. 2008).

## II.

"A sentence appeal waiver must be made knowingly and voluntarily."  Id. (citing United States v. Weaver, 275 F.3d 1320, 1333 n.21 (11th Cir. 2001)).  "The waiver is valid if the government shows either that: (1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." Id. (citing United States v. Bushert, 997 F.2d 1343, 1351 (11th Cir. 1993)).

We have explained:

> [K]nowingly and voluntarily entered plea agreements containing appeal waivers are like contracts in which the government and the defendant have bargained for a deal. Defendants and the government

3

alike benefit from the ability to bargain and undermining the enforceability of such bargains harms all parties that use them. For that reason, among others, as long as an appeal waiver is voluntarily and knowingly entered into as part of a valid plea agreement, and that agreement is accepted by the court, the waiver is enforceable.

United States v. Bascomb, 451 F.3d 1292, 1296–97 (11th Cir. 2006) (citations omitted).  Only in extreme cases, such as if a defendant were sentenced to a public flogging, should an appeal be heard despite a knowing and voluntary waiver.  See id. at 1295.

We have emphasized that "a waiver of appellate rights applies not only to frivolous claims, but also to difficult and debatable legal issues.  Indeed, it even includes a waiver of the right to appeal blatant error."  United States v. DiFalco, 837 F.3d 1207, 1215 (11th Cir. 2016) (citations and quotation marks omitted). That is so because "when the parties have struck a deal that includes the appeal waiver, a decision altering the terms of that waiver would cut the heart out of the bargain." United States v. Lewis, 928 F.3d 980, 986 (11th Cir. 2019) (alterations and quotation marks omitted).  "We will not perform a waiverectomy."  Id.

If an enforceable appeal waiver applies, Harris is barred from challenging his sentence, and we are "required to dismiss his appeal."  DiFalco, 837 F.3d at 1215 (emphasis added).

III.

With the assistance of counsel, Harris pleaded guilty to a felon in possession of a firearm charge, and he entered a written plea agreement. Harris' plea agreement does contain an appeal waiver, set out with an underlined heading in bold and all capital letters titled: "**THE DEFENDANT'S WAIVER OF APPEAL AND COLLATERAL ATTACK**." The waiver states:

> Understanding that 18 U.S.C. § 3742 provides for appeal by a defendant of the sentence under certain circumstances, the defendant expressly waives any and all rights conferred by 18 U.S.C. § 3742 to appeal the sentence. The defendant specifically waives the right to appeal the sentence on the grounds that (a) the sentencing guidelines are in any respect unconstitutional, (b) any fact found by the Court for sentencing was not alleged in the Indictment, admitted by the defendant, found by a jury, or found beyond a reasonable doubt, (c) the sentence imposed was unreasonable, and (d) that the Court erred in determining the applicable Guidelines range pursuant to the United States Sentencing Guidelines. The defendant further expressly waives the right to appeal the conviction and sentence on any other ground and waives the right to attack the conviction and sentence in any post-conviction proceeding, including proceedings pursuant to 28 U.S.C. § 2255. This waiver does not include the right to appeal on the grounds of ineffective assistance of counsel or prosecutorial misconduct, or to collaterally attack the sentence imposed on those grounds. But, other than those grounds, the defendant expressly waives the right to appeal or collaterally attack his conviction or sentence on any other ground.

The next provision says: "The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the United States Sentencing Guidelines, if any, applicable to the defendant's case will be determined solely by the Court,

5

with the assistance of the United States Probation Office." Harris agreed to all of those provisions, and he and his counsel signed the plea agreement.

At the plea colloquy, the judge placed Harris under oath and questioned him to ensure that his plea was knowing and voluntary. Harris confirmed that it was his signature on the plea agreement. He testified that he had reviewed the agreement with his attorney and that he understood its terms. He testified that no one had threatened him or tried to force him to sign it. He agreed that he understood that the sentencing judge was free to "follow the agreement in whole or in part or not at all," and in any event he would still be bound by his guilty plea.

The judge told Harris that he faced a maximum sentence of ten years in prison. He told Harris that his sentence would be determined using a number of factors, including the calculation of his advisory guidelines range. Harris acknowledged that his counsel had discussed with him how the guidelines might apply. The judge emphasized that no one, including the judge who would later impose his sentence, could tell Harris "precisely what the guidelines are going to require in your case and that the sentence may very well be different than any estimate that your lawyer may have given you." Harris said he understood that. The judge went on to explain that even if Harris' lawyer could accurately predict what the guidelines would require, the sentencing judge had to consider other

6

factors and could impose a sentence "more severe or less severe" than the guidelines called for.  Harris said he understood that.

The judge specifically addressed the appeal waiver and the fact that under the terms of the written plea agreement Harris was giving up his appeal rights. There was this exchange on the subject:

> THE COURT: Mr. Harris, ordinarily a person who enters a plea of guilty or one who goes to trial and is found guilty — ordinarily, under those circumstances, that person may still appeal their conviction or their sentence or both, or they may collaterally attack their conviction or their sentence or both.  Do you understand that under the terms of your plea agreement, that if you get the benefit of the deal that you've struck with the government, that you've given up your rights to do those things.
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you know and understand that if you didn't have that provision in your plea agreement, that if you chose to appeal, that this Court could provide you with a free attorney and a free transcript so that you could appeal if you chose to do so?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And you understand you're giving that up if you get the benefit of the bargain that you've struck with the government?
>
> THE DEFENDANT: Yes, sir.

The judge did not discuss the waiver's two exceptions for claims of ineffective assistance of counsel or prosecutorial misconduct.  Harris' guilty plea was accepted, and a judgment of conviction was entered.

IV.

The only conceivable grounds for finding that Harris' appeal waiver was involuntary is that the judge did not recite during the plea colloquy the two exceptions that the written plea agreement contained.  Arguably, by not mentioning the waiver's two exceptions, the judge overstated the breadth of the waiver and implied that Harris was waiving more rights than he actually was under the agreement.[1]

The fact that the waiver in the written plea agreement is more favorable to Harris than the one the judge described does not, in this case, mean that his appeal waiver was involuntary or invalid, since Harris' agreement to the judge's description of the appeal waiver necessarily indicated his agreement to his actual, narrower appeal waiver.  The court asked him if he understood that he was waiving his right to appeal his sentence, and he swore that he did.  That is the essence of a voluntary waiver.  See Bushert, 997 F.2d at 1350 (explaining that "one of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a right to

---

[1] There is nothing to indicate that the judge in this case intentionally characterized the appeal waiver as broader than it actually was, and we do not imply that he did.  Still, judges should take care to describe an appeal waiver accurately.  Including in the description any exceptions to the waiver will ensure that the defendant understands what rights of appeal he has left.  In this opinion, we address only the facts before us and do not preclude the possibility that an overbroad description of a waiver in some different circumstances might show that the defendant did not understand the actual terms of the plea agreement and waiver.

appeal his sentence and that he was giving up that right") (quotation marks omitted).

A defendant who agrees to waive his appeal rights with no exceptions whatever is willing to waive more than a defendant who agrees to waive his appeal rights except for two claims or issues if they apply.  Everything is more than everything with two exceptions. There is no imaginable reason why Harris would agree to waive all his appeal rights but not agree to waive some but not all.  If the misstatement had run in the opposite direction — telling the defendant the waiver was *narrower* than it was, that he was giving up *less* than he actually was — there might well be a problem with voluntariness.  Cf. id. at 1352–53 (concluding that it was confusing when the district court told the defendant at the plea colloquy that he was "waiving his right to appeal the *charges* against him" and then told him that he might have the right to appeal his sentence "under some circumstances" when he actually "was giving up his right to appeal under *most* circumstances").

Harris has neither invoked the appeal waiver exceptions in his plea agreement nor made any argument that could fit within them.  And the argument he has made challenging his sentence fits squarely within the heart of the waiver, both as written and as the judge explained it to him.

The waiver states: "The defendant specifically waives the right to appeal the sentence on the grounds that . . . the Court erred in determining the applicable

9

Guidelines range pursuant to the United States Sentencing Guidelines." Harris'
sole argument on appeal is that the district court erred in determining his guidelines
range by applying the cross-reference for voluntary manslaughter.[2] The plain
terms of the appeal waiver foreclose an appeal on that basis.

"The classic definition of waiver is 'an intentional relinquishment or
abandonment of a known right or privilege.'" Lewis, 928 F.3d at 986 (quoting
Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938)). By the
express terms of the appeal waiver, Harris has intentionally relinquished and
abandoned his right to appeal his sentence based on the district court's
determination of the applicable guidelines range.

V.

For those reasons, this Court's earlier order is **VACATED**, and the appeal is
**DISMISSED**.[3]

---

[2] We do not fault Harris' counsel for making that argument. She was directed to do so after her motion to withdraw was denied. She has provided able representation to Harris throughout this appeal, and her public service as a court-appointed attorney is in keeping with the best traditions of the Bar.

[3] This appeal was originally scheduled for oral argument but was removed from the oral argument calendar by unanimous consent of the panel under 11th Circuit Rule 34–3(f).