[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 19-14787

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ANTONIO MARQUIS RODDY,
a.k.a. Lil Head,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:18-cr-00099-EAK-JSS-4

_____

Before WILSON, BRASHER, and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Antonio Marquis Roddy appeals his convictions and 304-month sentence arising out of his participation in a series of planned armed robberies in Florida.  On appeal, Roddy argues that the district court (1) abused its discretion in denying his motion to withdraw his guilty plea, and (2) erred in sentencing him as a career offender under U.S.S.G. § 4B1.1.  After review, we affirm the district court's denial of Roddy's motion as to his guilty plea, and we dismiss Roddy's sentence appeal as barred by his sentence-appeal waiver in his plea agreement.

## I.    BACKGROUND

### A.  Offense Conduct

From May 2015 through July 20, 2017, Roddy and five others conspired to commit several Hobbs Act robberies of local drug dealers in Florida.  Roddy participated in two of the robberies, both involving firearms.  During the first robbery, on January 31, 2016, Roddy and his co-conspirators broke into a home, held women and children at gunpoint, and stole approximately $95,000.

During the second robbery, on April 23, 2016, Roddy and others broke into another home, but the victim returned and fired on Roddy and his co-conspirators.  While fleeing the residence, Roddy or his co-conspirator stole an AK-47 from the residence and

fired back at the victim.  After being shot in the knee, Roddy went to the hospital, where he received treatment.

### B.  Indictment

A superseding indictment charged Roddy with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) ("Count One"); two counts of Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a)–(b) and 2 ("Counts Four and Six"); brandishing a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (c)(1)(C), and 2 ("Count Five"); and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii), (c)(1)(C), and 2 ("Count Seven").

### C.  Plea Agreement

Roddy, represented by retained counsel Roger Weeden, entered into a written plea agreement.  Roddy agreed to plead guilty to all five counts and cooperate with the government.  Roddy also waived his right to appeal his sentence "on any ground, including the ground that the Court erred in determining the applicable guidelines range."  The only exceptions to the waiver were if the sentence: (1) "exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines"; (2) "exceeds the statutory maximum penalty"; or (3) "violates the Eighth Amendment to the Constitution."

In turn, the government agreed to recommend that Roddy (1) receive a three-level decrease for acceptance of responsibility, and (2) be sentenced within his advisory guidelines range.  The

government also agreed to consider filing a motion at sentencing for a downward departure under U.S.S.G. § 5K1.1, or for the imposition of a sentence below a statutory minimum under 18 U.S.C. § 3553(e), or both, if Roddy provided "substantial assistance."

### D. First Plea Hearing on September 10, 2018

At his change of plea hearing, Roddy confirmed he had read both the indictment and plea agreement, reviewed both documents with Roger Weeden, and understood both. The magistrate judge found Roddy fully competent to enter his guilty plea.

However, when the magistrate judge asked Roddy whether he had spoken with his counsel about the facts and evidence in his case, Roddy answered that he had not. After a brief recess, Roddy returned and asked for more time to go over the facts and evidence with his counsel.

After a second recess, defense counsel Weeden stated that "there's a great deal of indecisiveness" on Roddy's part. The magistrate judge explained, *inter alia*, that Roddy should not feel rushed because he was making such a big decision to plead guilty. The magistrate judge recessed the hearing to allow Roddy and Weeden to discuss the plea agreement.

### E. Second Plea Hearing on September 12, 2018

At the second plea hearing, Roddy confirmed that he and Weeden had "thoroughly discussed the case" and plea agreement. The magistrate judge asked Roddy several questions regarding his satisfaction with his attorney. Roddy agreed that (1) he had

discussed with his lawyer all his options, including the option to take his case to trial; (2) his lawyer had done everything Roddy had asked him to do; and (3) Roddy was fully satisfied with his lawyer's advice and representation.

The magistrate judge then explained the charges to which Roddy was pleading guilty and the provisions of the plea agreement. The magistrate judge specifically and carefully confirmed that Roddy understood that the district court judge would use the United States Sentencing Guidelines to fashion his sentence, and that any estimates of his sentence were not binding on the court or a basis to withdraw his plea. The plea colloquy included these questions and answers, among others:

> THE COURT: I also want to explain to you that although you and your attorney may have talked about the sentencing guidelines and you may have talked about how they might apply in your case, that is appropriate. . . . but there can be no promises to you or guarantees to you about the sentence that you will receive. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: The sentence that you do receive is up to the judge. And so whatever your expectations are about your sentence are not binding. It is important for you to know, Mr. Roddy, that you cannot later attempt to withdraw your guilty plea because you thought you were going to receive a different sentence. Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT:  Now, . . . this provision explains that the Government is agreeing to recommend to the Court that you be sentenced within your applicable guideline range as determined by the Court using the United States sentencing guidelines as adjusted by any departure the Government has agreed to recommend in this plea agreement.

That could assist you in getting a better sentence, but it is important for you to know, as I mentioned to you, that any recommendations concerning your sentence are not binding on the Court.  And if the recommendation of the Government is not accepted by the Court, you will not be permitted to withdraw from this plea agreement or your guilty plea. Do you understand that?

THE DEFENDANT: Yes, ma'am.

Reviewing Roddy's sentence-appeal waiver, the magistrate judge explained that Roddy was waiving his right to appeal his sentence except on "very limited grounds."  The magistrate judge explained the limited grounds in the plea agreement, and specifically stated, "Mr. Roddy, if there is a mistake in determining the applicable guideline range using the United States sentencing guidelines, that is something that you cannot appeal."  Roddy confirmed that he understood.

However, when Roddy was asked whether he discussed the appeal waiver with his counsel, Roddy answered that he had not

done so.  The magistrate judge said, "I would like to give . . . you two a moment to just talk about that further to be sure that Mr. Roddy has all the information that he needs to be able to make that decision about waiving his right to appeal."

Thereafter, Roddy and Weeden took time to confer and discuss the appeal waiver.  The magistrate judge asked again whether Roddy had discussed the appeal waiver with counsel, and Roddy said he did.  The magistrate judge asked whether Roddy had any questions about the appeal waiver.  Roddy answered that he did not.  The magistrate judge then asked whether Roddy was freely and voluntarily waiving his right to appeal his sentence.  Roddy said that he was.

The magistrate judge reviewed the elements of the charges that the government would have to prove if Roddy went to trial, as well as the trial rights waived.

The magistrate judge also explained the possible penalties for Roddy's five charges—including the maximum and minimum terms of imprisonment, fines, and supervised release.  The magistrate judge clarified that the charges in Counts Five and Seven carried mandatory minimum terms of imprisonment that ran consecutively.  As to Count Five, the magistrate judge explained that the charge "is punishable by a mandatory minimum term of imprisonment of seven years up to life, consecutive to any and all other sentences."  Roddy confirmed that he understood.  Similarly, as to Count Seven, the magistrate judge stated that the charge "is punishable by a mandatory minimum term of imprisonment of 25

years up to life, consecutive to any and all other sentences." Again, Roddy confirmed that he understood.

The government provided the factual basis for the guilty plea, and Roddy admitted those facts. The magistrate judge found that Roddy was competent to plead guilty, and that he was doing so knowingly and voluntarily, with full understanding of the nature of the charges and consequences of such a plea.

Thereafter, the magistrate judge issued a report and recommendation ("first R&R") that the district court accept the plea and adjudge Roddy guilty on all five counts in the superseding indictment. Roddy did not object to the first R&R, and the district court accepted the plea and adjudged Roddy guilty.

On October 3 and 8, 2018, Roddy testified as a government witness in a trial of a co-conspirator. Roddy described his involvement in the two robberies to which he had pled guilty.

### F.  First Presentence Investigation Report

On December 4, 2018, the Probation Office issued Roddy's first presentence investigation report ("first PSI"). Roddy's first PSI calculated a total offense level of 26, using: (1) a base level offense of 20 under § 2B3.1(a); (2) a two-level increase under § 2B3.1(b)(2)(F) because "a threat of death was made"; (3) a two-level increase under § 2B3.1(b)(4)(B) because people were "physically restrained to facilitate commission of the offense"; (4) a one-level increase under § 2B3.1(b)(6) because a controlled substance was "an object of the offense"; (5) a one-level increase under

§ 2B3.1(b)(7)(B) because $95,000 was taken; (6) a two-level increase under § 3A1.1(b)(1) because "vulnerable victims" were held at gunpoint; (7) a one-level increase under § 3D1.4 because of the multiple count adjustment; and (8) a three-level decrease under § 3E1.1(a)–(b) for acceptance of responsibility.

However, because Roddy was considered a career offender under § 4B1.1 and the statutory maximum for § 924(c) was life imprisonment, the first PSI recommended a total enhanced offense level of 34. As a career offender, the first PSI assigned him a criminal history category VI.

Ultimately, as to Counts One, Four, and Six, the first PSI determined that Roddy had a total offense level of 34 and a criminal history category VI, yielding an advisory guidelines range of 262 to 327 months. As to the § 924(c) firearm offenses in Counts Five and Seven, the first PSI determined that Roddy's advisory guidelines sentence was the statutory minimum terms of 7 and 25 years, to be served consecutively to any other counts.

## G. First Step Act

After Roddy's plea hearing and first PSI in 2018, but before his sentencing and final PSI in 2019, the First Step Act was signed into law on December 21, 2018. As relevant here, the First Step Act had the effect of reducing Count Seven's mandatory minimum to 10 years, instead of 25. *See* First Step Act of 2018, Pub. L. No. 115-391, § 403(a).

### H. Motion to Withdraw Guilty Plea

On May 29, 2019, the government filed its Sentencing Memorandum, seeking concurrent sentences of 110 months of imprisonment for Counts One, Four, and Six; and mandatory consecutive sentences of 7 years and 10 years for Counts Five and Seven, thus totaling a 314-month sentence.

On May 31, 2019, at Roddy's sentencing hearing, defense counsel Weeden informed the district court that Roddy wanted to withdraw his plea. Weeden also moved to withdraw as counsel. The district court ordered Roddy and Weeden to appear before a magistrate judge for a hearing. The magistrate judge granted Weeden's motion to withdraw and appointed Roddy new counsel.

On August 1, 2019, Roddy, represented by new counsel, filed a motion to withdraw his plea and requested an evidentiary hearing. Roddy's motion alleged that he entered into the plea agreement and pled guilty based on Weeden's assurances that "if he continued with the plea agreement and cooperated, counsel would obtain a sentence of less than ten years for Mr. Roddy."

### I. Evidentiary Hearing on Motion to Withdraw Guilty Plea

On August 27, 2019, a magistrate judge held an evidentiary hearing regarding Roddy's motion to withdraw his guilty plea. Both Roddy and Weeden testified. According to Roddy, Weeden never reviewed Roddy's possible sentence or the sentencing guidelines with him and assured him that the prosecutors would not seek to designate him as a career offender. Further, both before and in

between his plea hearings, Weeden told Roddy that, if Roddy continued to cooperate with the government, Weeden could get Count Seven "thrown out" and get Roddy a sentence of under 10 years. According to Roddy, this assurance was why he went forward with the plea.

Roddy also testified that, although he had read and signed the plea agreement with Weeden, he had never discussed the appeal waiver with Weeden. Roddy claimed that (1) he did not really understand the plea agreement; (2) he was just doing what Weeden told him to do when he signed the plea agreement; and (3) he lied during the second plea hearing when he told the magistrate judge that he and Weeden had thoroughly discussed the facts and evidence.

Weeden's testimony largely contradicted Roddy's testimony. Weeden told Roddy that, considering the facts and evidence, it was his professional opinion that "to go to trial with this evidence would be most likely a disaster," and Roddy should enter a plea agreement early in his case. Weeden printed the plea agreements of Roddy's co-conspirators and reviewed with Roddy those agreements and Roddy's proposed plea agreement, paragraph by paragraph.

Regarding the sentence that Roddy faced, Weeden testified that: (1) he explained to Roddy about the range of possible outcomes at sentencing, both from his experience and according to the guidelines; (2) he told Roddy that he would argue for a sentence below the then-25-year mandatory minimum in Count Seven, but

he also told Roddy that he "didn't see [a 10-year sentence] happening, and that it was "substantially unlikely"; (3) he told Roddy that, in federal court, there is no agreement that Roddy can make with the government for a specific sentence; (4) he advised Roddy he could be designated as a career offender; (5) he told Roddy, in his estimation and because of the sentences Roddy's co-conspirators had received, he expected that a sentence of around 20 years would be Roddy's "best opportunity"; and (6) he specifically discussed the sentence-appeal waiver with Roddy and explained that it waived the right to appeal his sentence except for a few narrow exceptions.

## J.  Denial of Motion to Withdraw Guilty Plea

In a second report and recommendation ("second R&R") issued on October 16, 2019, the magistrate judge made fact findings that fully credited Weeden's testimony about his discussions with Roddy. For example, the magistrate judge found that Weeden and Roddy met three or four times, where they discussed the facts, evidence, and the option to plead guilty or go to trial. In particular, the magistrate judge pointed to Weeden and Roddy's in-person meeting at the jail that "lasted at least an hour," where they "fully reviewed the plea agreement . . . , including the provisions regarding mandatory minimum terms, cooperation, and the appellate waiver." At that meeting, Weeden also "discussed the possibility that [Roddy] could be considered a career offender," and advised Roddy "that he faced a 25-year mandatory minimum sentence," but that Weeden's "best estimate" was around 20 years. Indeed, the magistrate judge found that Weeden "stressed to [Roddy] that,

unlike in state court, there could be no guarantees about the length of sentence" Roddy would receive.

The magistrate judge found Roddy's testimony about receiving only a 10-year sentence was not credible.  The second R&R stated: "Although [Roddy] testified that Mr. Weeden promised him that he would receive a sentence of ten years of imprisonment if he pleaded guilty, the Court does not find this testimony credible." Weeden advised Roddy that such a sentence was "substantially unlikely."

The magistrate judge applied the *Buckles* factors and found that all four factors weighed against allowing Roddy to withdraw his plea. *See United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988).  The second R&R recommended that the district court deny Roddy's motion.

Roddy objected to the second R&R, disputing some of the magistrate judge's fact findings.  Roddy contended that Weeden did not tell him he was a career offender or that he faced consecutive 7-year and 25-year sentences on Counts Five and Seven. Roddy maintained that Weeden told him that he "would receive a ten year sentence."  Roddy argued that he "could not have had close assistance of counsel when his counsel never reviewed discovery with him, never calculated the guidelines for him, told him the correct consecutive sentences he was facing or informed him he was a career offender."

The district court overruled Roddy's objections, adopted the second R&R, and denied Roddy's motion to withdraw his plea. The district court emphasized the magistrate judge's "detailed factual findings," and in particular the finding that Roddy's testimony that Weeden promised Roddy he would receive at 10-year sentence was not credible.

The district court also stressed that the magistrate judge had "conducted a comprehensive plea colloquy," where she (1) "outlined the elements of the charges and the penalties associated with the charges," and (2) advised Roddy "that there were not promises or guarantees as to the sentence" that he would receive. Moreover, Roddy had acknowledged during the colloquy that "he understood that there were no promises or guarantees about his ultimate sentence, and that he understood that whatever expectations he might have about his sentence would not entitle [him] to later attempt to withdraw his guilty plea because he thought he was going to receive a different sentence." Last, the district court found that the "length of the delay" between the second plea hearing (September 12, 2018) and Roddy's motion (May 31, 2019) "weigh[ed] against" Roddy's arguments.

## K. Final Presentence Investigation Report

On November 6, 2019, the Probation Office issued Roddy's final presentence investigation report ("final PSI"), which updated the first PSI to reflect the enactment of the First Step Act and made two other relevant changes.

As to Counts One, Four, and Six, Roddy's final PSI initially calculated a total offense level of 24 (rather than the previous 26 because the Probation Office removed the earlier two-level increase based on a "threat of death" under U.S.S.G. § 2B3.1(b)(2)(F)). Like the first PSI, Roddy was a career offender under § 4B1.1 and assigned a criminal history category of VI. However, this time the PSI relied upon only the 20-year statutory maximum of Counts One, Four, and Six, and recommended a total enhanced offense level of 29 (rather than the previous 34).

As to Counts One, Four, and Six, the final PSI determined that Roddy's total offense level of 29 and criminal history category of VI yielded an advisory guidelines range of 151 to 188 months. As to the § 924(c) firearms offenses, the second PSI determined that Roddy's advisory guidelines sentence was the mandatory minimum terms of 7-years imprisonment on Count Five and 10-years imprisonment on Count Seven, to run consecutively to each other and any other counts.

### L. Sentencing

On November 14, 2019, the district court held a sentencing hearing. After overruling Roddy's objection to his career offender designation, the district court adopted the PSI's findings, guidelines calculations, and recommended advisory guidelines range of 151 to 188 months on Counts One, Four, and Six. The district court departed downward on Roddy's offense level for his substantial assistance, resulting in an advisory guidelines range of 100 to 125 months. The district court imposed concurrent sentences of 100

months for Counts One, Four, and Six, and mandatory consecutive sentences of 7 years (84 months) and 10 years (120 months) for Counts Five and Seven, totaling a 304-month sentence.

Roddy's counsel objected that the sentence was procedurally and substantively unreasonable.

## II.    DISCUSSION

On appeal, Roddy argues the district court erred when it (1) denied his motion to withdraw his guilty plea, and (2) sentenced him as a career offender.  We find no error as to the first issue and Roddy's sentence-appeal waiver bars his career offender claim.  We explain why.

### A.  Motion to Withdraw Guilty Plea[1]

Following the district court's acceptance of a plea and before sentencing, a defendant may withdraw a guilty plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  The district court "may consider the totality of the circumstances" to determine whether the defendant has shown a fair and just reason. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006) (quoting *Buckles*, 843 F.2d at 471–72). Courts look to whether: (1) "close assistance of counsel was available"; (2) "the plea was knowing and voluntary"; (3) "judicial

---

[1] We review a district court's denial of a motion to withdraw a guilty plea for abuse of discretion.  *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006).

resources would be conserved"; and (4) "the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* (quoting *Buckles*, 843 F.2d at 472).

In motions to withdraw a guilty plea, credibility is for the trial court to decide. *Id.* We will not reverse a district court's credibility finding "unless the finding is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Cavallo*, 790 F.3d 1202, 1227 (11th Cir. 2015) (quotation marks omitted).

Here, the district court did not abuse its discretion in denying Roddy's motion. The district court appropriately applied the *Buckles* factors and relied on the credibility findings of the magistrate judge. First, Weeden provided Roddy with close assistance of counsel. Roddy and Weeden met on multiple occasions to discuss the case, and Weeden specifically told Roddy that "to go to trial with this evidence would be most likely a disaster." Further, he advised Roddy to cooperate early for a favorable deal and attempted to schedule a proffer shortly after that first meeting.

Once Weeden had a proposed plea agreement, he went over it with Roddy paragraph by paragraph. Indeed, at the second plea hearing, Roddy admitted that he was fully satisfied with Weeden. The district court found that statement by Roddy more credible than his later testimony at the motion to withdraw hearing.

Second, the district court properly determined that Roddy knowingly and voluntarily entered the plea agreement. The

magistrate judge meticulously conducted the plea colloquy, ensuring that Roddy made his decision knowingly and voluntarily. When Roddy showed indecision at the first plea hearing, the magistrate judge recessed the proceedings to give him time to consult with his attorney and meet with the government.

At the second plea hearing, the magistrate judge assiduously informed Roddy of his charges, plea agreement, appeal waiver, and penalties. On multiple occasions, the magistrate judge informed Roddy that any agreements or estimates by his attorney or the government were not binding on the sentencing court. Further, the magistrate judge explained, "if there is a mistake in determining the applicable guideline range using the United States sentencing guidelines, that is something that you cannot appeal." Roddy confirmed that he understood. Therefore, the district court correctly found that Roddy knew that any estimated prison term was not binding on the court.

The district court addressed all four *Buckles* factors but primarily relied on the first two: (1) close and adequate assistance of counsel and (2) entry of a knowing and voluntary plea. Roddy has shown no error, much less abuse of discretion, in the district court's application of the *Buckles* factors.

Roddy's arguments on appeal rely primarily on his own testimony at the motion hearing, which the magistrate judge found not credible. Determining the credibility and weight of a witness's testimony is the province of the district court, and the district court accepted the magistrate judge's credibility determinations. *See*

*Brehm*, 442 F.3d at 1298. Roddy has not argued, much less shown, that the magistrate judge's credibility findings were contrary to the laws of nature or inconsistent or improbable on their face such that no reasonable factfinder could accept them. *See Cavallo*, 790 F.3d at 1227. Therefore, the district court did not abuse its discretion in determining that Roddy failed to show a fair and just reason to justify withdrawal of his guilty plea.

### B.  Validity of Sentence-Appeal Waiver[2]

Roddy challenges the district court's decision to sentence him as a career offender under U.S.S.G. § 4B1.1(a). In response, the government contends Roddy's guidelines claim is barred by his sentence-appeal waiver in the plea agreement.

We will enforce a sentence-appeal waiver if it was made knowingly and voluntarily. *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008). To establish that a sentence-appeal waiver was made knowingly and voluntarily, the government must prove either that: "(1) the district court specifically questioned the defendant about the waiver; or (2) the record makes clear that the defendant otherwise understood the full significance of the waiver." *United States v. Lewis*, 928 F.3d 980, 985 (11th Cir. 2019) (quoting *Johnson*, 541 F.3d at 1066). If a sentence-appeal waiver is deemed valid, it bars an appeal raising "difficult or

---

[2] This Court reviews the validity of a sentence-appeal waiver *de novo*. *United States v. DiFalco*, 837 F.3d 1207, 1215 (11th Cir. 2016).

debatable legal issues or even blatant error." *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir. 2006).

Here, the plea agreement stated that Roddy "expressly waived the right to appeal [his] sentence on any ground, including that the Court erred in determining the applicable guideline range." The waiver, then, covers Roddy's alleged guidelines calculation error. Further, none of the circumstances under which Roddy reserved his right to appeal his sentence has occurred. Therefore, this Court need only determine whether the sentence-appeal waiver is valid.

In conducting Roddy's plea colloquy, the magistrate judge specifically questioned Roddy about the sentence-appeal waiver. The record makes clear that Roddy understood the full significance of the appeal waiver. At the second plea hearing, the magistrate judge twice went over the appeal waiver. Roddy confirmed that he understood that even if the district court incorrectly calculated his advisory guidelines range, as he alleges here, he would not be able to appeal. At the hearing and by signing the plea agreement, Roddy confirmed that he understood.

When Roddy indicated he had not discussed the appeal waiver with his attorney, the magistrate judge paused the hearing to allow Roddy and his attorney to discuss the waiver. After that discussion, the magistrate judge again confirmed Roddy's understanding of the waiver, and that Roddy was waiving his right to appeal knowingly and voluntarily. This is sufficient under our precedent to indicate that Roddy knew he was giving up the right

to appeal his sentence and that he was doing so voluntarily. *See Lewis*, 928 F.3d at 985.

Because the sentence-appeal waiver is valid and enforceable, the waiver bars Roddy's career offender claim, and we dismiss his appeal of his sentence.

### III.    CONCLUSION

We affirm the district court's denial of Roddy's motion to withdraw his plea and dismiss his sentence appeal as barred by his sentence-appeal waiver in his plea agreement.

**AFFIRMED IN PART, DISMISSED IN PART.**